# United States Department of the Interior

**BUREAU OF INDIAN AFFAIRS**
Washington, D.C. 20240



IN REPLY REFER TO:

RECEIVED

Tribal Government Services - TR
2611 MS/MIB

SEP 1 6 1994

SEP 23 1994

Tribal Services
Juneau Area Office

Ms. Shirley L. Lee
Director, Village Government Services
Tanana Chief's Conference, Inc.
201 First Avenue
Fairbanks, Alaska 99701-4897

Dear Ms. Lee:

We have completed our legal and technical review of the proposed Constitution of the Native Village of Dot Lake which was submitted by the Juneau Area Director (Area Director) by memorandum of May 3, 1989. The proposed document was accompanied by Resolution No. IRA-88-2, adopted by the Village Council on August 16, 1988. The resolution sets forth the desire of the Native Village of Dot Lake to organize under the provisions of Section 16 of the Indian Reorganization Act (IRA) of June 18, 1934 (48 Stat. 984), as amended, and requests that the Secretary of the Interior (Secretary) call and conduct an election to permit the qualified voters of the Village to vote on the adoption or rejection of a proposed constitution.

On October 26, 1992, the Area Director notified us that as a result of working with the Tanana Chiefs Conference (TCC) to resolve discrepancies in the Dot Lake membership roll it was discovered that the most recent version of the proposed constitution for Dot Lake had not been submitted to this office for review. Accordingly, the version submitted by the President of the Native Village of Dot Lake to TCC on March 11, 1992, was forwarded to this office by the Area Director. Since we had already completed our review on the 1989 version, we have reviewed the latest submission and modified our review letter accordingly. A comparison of the two documents reflect that revisions were made to Section 3 of Article III - Membership; Section 5 of Article V - Duties of Officers; Article X - Amendments; and Article XI - Dissolution.

We are concerned about the eligibility of the Native Village of Dot Lake to organize under the IRA. By memorandum of September 22, 1988, the Fairbanks Agency Superintendent submitted the proposed constitution to the Area Director and included the history of Dot Lake as found in a village profile prepared in 1980 by the State of Alaska, Department of Community and Regional Affairs. While some of the data was inadvertently omitted from the bottom of the document by inexact copying, the document listed the history thusly:

Dot Lake is located on the Alaska Highway 155 road miles southeast of Fairbanks and approximately 50 miles northwest of Tok. The Village, primarily a Native community, <u>was established in 1946 by the Charles family.</u> Before this, it was a temporary seasonal hunting camp for Natives from the George Lake/Tanacross area.... (Emphasis supplied).

DOCUMENTS ATTACHMENT 5
PAGE 1 OF 11

The Alaska Amendment to the Indian Reorganization Act (25 U.S.C. 473(a)) reads:

> Sections 461, 465, 467, 468, 475, 477 and 479 of this title shall, after May 1, 1936, apply to the Territory of Alaska: Provided, that groups of Indians in Alaska not recognized prior to May 1, 1936, as bands or tribes, but having a common bond of occupation, or association, or residence within a well-defined neighborhood, community or rural district, may organize to adopt constitutions and bylaws and to receive charters of incorporation and federal loans under Sections 470, 476 and 477 of this title.

The Native Village of Dot Lake seeks to organize on the basis of a "traditional common bond." The Department of the Interior (Department) has held that any Alaska group that was not in existence prior to May 1, 1936, is not eligible to organize under the statute.

We have asked the Solicitor's Office to review the legal basis for the Department's prior position. We understand that the Solicitor's Office may be nearing the completion of that review. However, in the meantime, we would like to give the Village the opportunity of presenting historical data it may have with respect to when and under what circumstances it was first established. We would also like to provide the Village with our technical comments so that the Village may begin considering them.

As you know, it is the position of the Bureau of Indian Affairs (BIA) that it does not have a complete and proper request for an election before it until it also has either a BIA approved roll or current membership list with enough information about how, when and by who the list was prepared to permit the Department to evaluate its completeness and reliability. Our regulations require us to give notice of the need to register as part of the notice or calling of the election. We can not fulfill our responsibilities for giving notice of the election and the need to register unless we can confirm the completeness of the list of members. The Department's position on the need for complete and accurate membership information has been clearly established since the June 9, 1988, instructions of the Assistant Secretary - Indian Affairs for processing requests for constitutional elections in Alaska.

Although it is not our normal practice to do so given the uncertainty of the eligibility of the Village to organize under the IRA, we have, nevertheless completed a legal and technical review of the proposed constitution. As a result of our review of the proposed document, we recommend modifications to it. The changes reflected in the enclosed version are to make the proposed document legally and technically sufficient and/or to conform with established BIA policy, that is, not contrary to applicable law. The primary changes are discussed below.

2

In the Preamble the Village proposes to organize on the basis of "having a traditional common bond" pursuant to the authority of the Indian Reorganization Act of 1934. As previously discussed, the Alaska Amendment to the IRA envisions organization on the basis of "having a common bond of occupation, or association, or residence within a well-defined neighborhood, community or rural district." The Preamble should be modified accordingly. We assume the common bond is residency or association. We also recommend the inclusion of the latest IRA amendment since the other statutes have been cited. The Preamble would then read as follows:

We, the members of the Native Village of Dot Lake, Alaska, having a common bond of residence in the neighborhood of Dot Lake, Alaska, in order to promote our welfare through the development of the governmental and economic enterprises, do establish this constitution in accordance with and by authority of the Indian Reorganization Act of June 18, 1934 (48 Stat. 984), as amended by the Acts of June 15, 1935 (49 Stat. 378); May 1, 1936 (49 Stat. 1250); and November 1, 1988 (102 Stat. 581).

We also note that when the group is being organized based on residence in a well-defined neighborhood, "village" is the most appropriate term to use. The membership provisions are also consistent with an organization based on a common bond of residence.

Article I - Name. For consistency with the title of the constitution, we recommend the name of the organization be the Native Village of Dot Lake rather than the Dot Lake Village. We also think it would be less confusing and harmonious if the Village was consistently referred to as the Village rather than sometimes referring to it as the tribe. We recommend the word "Village" be substituted in those instances where tribe is used.

Article II - Definition of Territory. We recommend that land be acquired in the name of the Native Village of Dot Lake rather than the Village Council.

We note that Roman numerals are used throughout the document to identify Article numbers as well as section numbers. We believe this is very confusing and recommend Arabic numbers be used to denote section numbers. For example, Section 1 rather than Section I.

We also note that the words "village" and "tribal" are used interchangeably throughout the document. For consistency, we recommend the use of "village" as more descriptive.

Article III - Membership. We recommend Section 1(b) be modified by deleting the words "as a minimum"; substituting the word "living" for "surviving" and including the word "living" between the words "their" and "direct." Section 1(b) would then read:

3

DOCUMENTS ATTACHMENT 5
PAGE 3 OF 11

b. The Village Membership Roll shall contain the names of all living individuals listed as members of the Village of Dot Lake under the Alaska Native Claims Settlement Act (ANCSA) and all their living direct descendants.

Since Section 2(a) applies to new members, in most cases newborns or adopted persons with a parent who is a member of the Village, we recommend that Section 2(a) be modified for consistency and clarity to read:

a. The names of direct descendants born to any Village member shall be included on the Village Membership Roll.

We recommend that Section 2(b) be moved to Section 3 as subsection (a) since it applies to the regulation of membership. Section 3 would read:

Section 3:  Regulation of Membership.

a. Village Membership Rolls shall be updated and certified at least once a year at the annual village meeting to be conducted during the second quarter of each calendar year. Individual tribal members will be responsible for notifying the Council of any change in family status which would effect the Village Membership Rolls and would include any request by individuals to be removed from the Village rolls.

b. The Council shall have the power to enact ordinances and resolutions prescribing rules and regulations governing membership, including application and appeal procedures, loss of membership, and adoption of members. The Council shall have the power to adopt ordinances to extend the privilege of membership, for community purposes only, to persons not otherwise eligible under Sections 1 and 2 of this Article.

Persons who are members for community purposes only will not be considered Alaska natives or Indians for purposes of Federal law by virtue of their membership nor can they be counted for Federal programs. Moreover, they can not vote or hold office. This category of membership should be defined in the constitution. We assume that this special membership for community purposes is intended for spouses of enrolled members that are members of other federally recognized Indian entities or non-Indian spouses of enrolled members or adopted children. We note that it is the intent of the Village that these "members for community purposes" will be "entitled to any other benefits and/or programs developed by the Native Village of Dot Lake." No benefits and/or programs which are derived from the use of Federal funds may be expended for these people.

4

We recommend that any enrollment ordinances or resolutions adopted by the council be consistent with the Indian Civil Rights Act (ICRA), that is, that equal protection and due process be afforded individuals subject to loss of membership.

It is necessary for the Area Director under his current delegation of authority to approve the base membership roll prior to calling an election. When submitted, a membership roll should include: name, roll number, address, sex, date of birth, date of death (when applicable), and degree of Indian blood. In the remarks section, if an ANCSA shareholder, list their ANCSA roll number. If the member is claiming descendance from an ANCSA share holder, show the relationship of the member to the shareholder, i.e., daughter, son. We understand the Area Director approved the Membership Roll of the Native Village of Dot Lake dated April 19, 1991, on October 23, 1992.

We recommend Section 4 be amended by clarifying that the members are under the jurisdiction of the Village as defined in Article II and by deleting the words "These shall be" from subsections (a), (b) and (c) for a more positive effect. Section 4 would read as follows:

    (a) Resident Tribal Members:   Those   members that are residing within the boundaries of the area under the jurisdiction of the Village as defined in Article II.

    (b) Non-Resident Tribal Members:   Those members that are not residing within the boundaries of the area under the juris-diction of the Village as defined in Article II.

    (c) Adopted Tribal Members:   Those tribal members that have been adopted by the Native Village of Dot Lake. They may be resident or a non-resident.

Section 1 of Article IV - The Council provides that the governing body shall be the Dot Lake Village Council herein referred to as the Council. However, throughout the document the Council is variously referred to as the Council or the Village Council. Although we prefer the use of Village Council, for consistency the provision of Section 1 would dictate that it be referred to as the Council.

In Section 2 of Article IV - The Council, we recommend that the word "shall" be substituted for the word "will" in the second sentence since the word "shall" describes a mandatory action which seems to be the intent of the Village Council.

We note that the Council has declined to establish terms for council members. While we do not think that is prudent, as a practical matter the Village has established a term of one year since council members have to be reaffirmed annually.

5

DOCUMENTS ATTACHMENT 5
PAGE 5 OF 11

Given the importance of the Powers section, we recommend that Section IV: Powers be made into a separate Article as Article V - Powers of the Village Council.

The enumeration of powers in Section 1 and the reference to retained powers in Section 2, when read together, could be misleading if approved by the Secretary.     The language implies that the Village has sovereign powers, some of which have been delegated to the Council and others which have been retained.     Any group which has reorganized pursuant to the IRA will possess certain delegated powers of self-government and corresponding immunities. However, only those groups which are in fact present-day successors to historically sovereign groups are entitled to assert retained sovereign powers.

As already noted, it is not clear from the information that we currently have available that the Dot Lake group is entitled to organize under the IRA, much less that it has retained sovereign powers.

Subsection (a) contains a typographical error in that the word "they" should be "the."

In subsection (i) of Section IV, we recommend that the exception contained in parenthesis be styled as a proviso.  Subsection (i) would then read:

> (i)  To administer the village's assets' and manage all economic affairs and enterprises of the Village, including the lease, sale, or other disposition of lands owned by the Village, Provided, That any sale of village property must be approved by the majority of adult village members.

We recommend that the last paragraph of Section IV be modified by providing that the retained powers may be exercised through the adoption of amendments to this constitution.  The paragraph would read as follows:

> The retained powers of the Native Village of Dot Lake not expressly referred to in this constitution shall not be lost by reason of their omission but may be exercised through the adoption of amendments to this constitution.

Section I of Article V - Duties of Officers is rather vague. We recommend his duties be worded more specifically as follows:

> Section 1.   The Chief/President. The Chief/President of the Council shall preside over all Village Council meetings, general village meetings, and general membership meetings, and shall execute on behalf of the Village all contracts, leases and other documents approved by the Council. The Chief/President may vote in any meeting only in case of a tie.  The Chief/President shall have general supervision of all other officers, employees and committees of the Village and see that their duties are properly performed. When the Council is not in session, he shall be the official representative of the Village.

6

For consistency and harmony, we recommend Section 2 be modified to read as follows:

Section 2.    The Second Chief/Vice President. The Second Chief/Vice President shall assist the Chief/President when called upon to do so and in the absence of the Chief/President shall perform the duties of the Chief/President.

In Section III we recommend the secretary's primary duties be detailed first followed by the secondary duties. We recommend the first sentence become the last sentence of the paragraph as follows:

The Secretary of the Council shall conduct all correspondence and keep a complete and accurate record of all business transactions of the Village or the Council. He/she shall record all rules, regulations and ordinances in appropriate books or files for the information and guidance of the Village members. The Secretary shall act as a chairperson in the event the Chief/President and the Second Chief/Vice President is absent from the Village.

We also recommend that the treasurer's duties be listed in a separate section from that of the secretary's. The treasurer's duties should appear in Section 4 and the remainder of the sections renumbered accordingly. The Council may wish to consider requiring that the treasurer be bonded. We also assume that if the treasurer is appointed from without the Council he/she will not be entitled to vote in Council proceedings.

In Section I of Article VI - Qualifications of Officers, we recommend that the word "shall" be substituted for the word "will" for consistency and to prevent a shift in the tense of the paragraph. The use of the word "shall" also conveys a mandatory action as opposed to a permissive action.

In the first sentence of Section I of Article VII - Change of Officers/Members of the Council, we recommend that the word "that" be substituted for the word "their" to comply with grammatical structure.

Section II contains a typographical error. The word "by" should be substituted for the word "my."

Section III provides that any member who moves away from the village on a permanent or semi-permanent basis may be removed from the Council. How is it determined that someone has moved away permanently or semi-permanently? Since we understand the Village has no written laws, the Council may wish to consider defining these terms in this Section to prevent any misunderstanding.

Article VIII - Meetings. For clarity, we recommend Section I (a) be modified by adding the phrase "but shall conduct meetings as the need arises" at the end of the sentence.

7

DOCUMENTS ATTACHMENT 5
PAGE 7 OF 11

We recommend that the word "shall" be substituted for the word "will" where ever it appears throughout Article VIII as previously discussed.

We recommend that Section 1(d) be modified by requiring that the Chief/ President call special meetings at the request of three (3) members of the Council.   We also recommend that Sections 1(d) and 1(e) be further modified by providing that the Council shall have the authority to transact business as in regular meetings provided a quorum is present. Sections 1(d) and 1(e) would read:

> d.   The Chief/President or the Second Chief/Vice-President may call special meetings as deemed necessary for the Village Council to function and shall call such meeting at the written request of three (3) members of the Council. A twenty-four (24) hour notice must be given to all Council members prior to any special meeting.    The Council shall have the power to transact business as in regular meetings, _Provided_, That a quorum is present.

> e.   The presence of three (3) or more Council member shall constitute a quorum for Council meetings. No business shall be transacted unless a quorum is present.

Section 1 of Article X - Amendments provides that this constitution may be amended by a majority vote of the qualified voters of the Village provided that at least 30% of the adult tribal members are present and vote. As previously discussed in reference to Article III, persons who are members for community purposes only will not be considered Alaska natives or Indians for purposes of Federal law by virtue of their membership nor will they be entitled to vote in Secretarial or tribal elections. Thus, Section 1 must be modified accordingly to read:

> Section 1.    This constitution may be amended by a majority vote of the qualified voters of the Native Village of Dot Lake voting in an election called for that purpose by the Secretary of the Interior or his authorized representative, PROVIDED, That at least thirty percent (30%) of those entitled to vote shall vote in such election. No amendment shall become effective until approved by the Secretary of the Interior or his authorized representative.

Section 2 of Article X has been modified to impose upon the Village Council a duty to request constitutional amendments whereas standard language imposes a duty on the Secretary to call an election at the request of the governing body.    The IRA recognizes that the governing body has the authority to request amendments to the constitution and that the Secretary has a mandatory duty to call and conduct such elections. We think the language "the Village Council to request that" is confusing and should be eliminated. If the Village is concerned about its authority to propose constitutional amendments, Section 2 could be modified to read:

8

Amendments to this constitution may be proposed by resolution of the
Village Council or upon receipt of a petition signed by at least
thirty percent (30%) of the eligible voters of the Village. It shall
be the duty of the Secretary of the Interior to call and conduct an
election on any amendment so proposed.

Further, the Village proposes to include language in Section 2 which would
require that "any proposed amendment must be written out and copies made
available to any tribal member requesting it at least thirty (30) days prior
to the date of the election." It is not appropriate to include this language
in the constitution since the IRA requires the submission of the text of the
proposed amendment(s) together with the resolution requesting the Secretarial
election in order for the request to be valid. Moreover, the Secretary's
election regulations require that the text of any amendment or proposed
constitution be made available to the tribal members prior to the election.
The text of the proposed document is usually provided when notice of the need
to register is sent to the eligible voters. Accordingly, we have deleted the
last sentence of Section 2.

We recommend that Article XI - Dissolution be deleted from the constitution.
While the letter dated November 30, 1988, from TCC explains that dissolution
refers to termination of the Village rather than revocation of the constitu-
tion, that explanation is not consistent with the text of the Article.
Article XI provides that "This Constitution shall continue in existence and
remain in effect until dissolved by a majority vote of the adult tribal
members of the tribe ...." This article can only be interpreted to mean
revocation of the constitution, not termination of the Village. Given the
sensitivity most Indian entities have to termination, we are surprised that
any Indian entity would have a provision in its constitution that remotely
referred to termination. In any event, we recommend the article be deleted
or, in the alternative, renamed "Revocation of the Constitution." Should it
not be deleted, the term "eligible voters" will have to be substituted for
the term "adult tribal members" as discussed in Article X.

Article XII - Adoption. As previously discussed, only "eligible voters" not
"adult tribal members" are entitled to vote in elections to adopt or amend an
IRA constitution. Article XII has been modified accordingly.

We note that the Village Council has not included a severability clause which
provides that if any provision of the constitution is found invalid by a
court of competent jurisdiction, the remainder of the constitution remains in
effect. We recommend that one be added as follows:

Article - Severability

If any provision of this Constitution shall be held invalid by a
court of competent jurisdiction, the invalid provision or provisions
shall be severed and the remaining provisions shall continue in full
force and effect.

9

DOCUMENTS ATTACHMENT 5
PAGE 9 OF 11

We also recommend the inclusion of an article dealing with ordinances and resolutions as follows:

Article - Ordinances and Resolutions

Section 1. Ordinances.    All final decisions on matters of permanent interest shall be embodied in ordinances. Such enactments shall be available for inspection by members of the Village during normal business hours.

Section 2. Resolutions.    All final decisions on matters of temporary interest where a formal expression is needed shall be embodied in resolutions, noted in the minutes, and shall be available for inspection by members of the Village during normal business hours.

Section 3. Form.    All ordinances and resolutions shall be dated and numbered and shall include a certificate showing the presence of a quorum, the number of members voting for and against the proposed enactment and the constitutional authority for such action.

This concludes our technical comments.    Upon receipt of the requested information documenting the Village's historical origins, we will make a determination as to the Village's eligibility to organize under the IRA.

Should you have any questions concerning this matter, you may contact the Branch of Tribal Relations, telephone (202) 208-7445 or FTS 268-7445.

Sincerely,

JIM THOMAS

Acting Director, Office of Tribal Services

Enclosure

10

DOCUMENTS ATTACHMENT 5
PAGE 10 OF 11

cc: /Area Director, Juneau
    Superintendent, Fairbanks Agency
    Native Village of Dot Lake
    Scott Keep, Assistant Solicitor, Tribal Govmt/Alaska, MIB 6456
    Alaska Liaison Office, MIB 4647

11

P.12

9073441522

Aschenbrenner Law Offices   09:54   JUN-26-2006