Peter J. Aschenbrenner
Aschenbrenner Law Offices, Inc.
Physical address: 823 Third Avenue, Fairbanks, Alaska 99701
Mailing address: P.O. Box 73998, Fairbanks, Alaska 99707
Telephone (907) 456-3910 • Fax: (907) 456-8064
Attorneys for Plaintiff

**RECEIVED**

JUN 2 9 2006

CLERK U.S. DISTRICT COURT
ANCHORAGE, ALASKA

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

ASCHENBRENNER LAW OFFICES, INC.
P.O. Box 73998, Fairbanks, Alaska 99707-3998
Phone: 907-456-3910  Fax: 907-456-8064

INTERIOR REGIONAL HOUSING
AUTHORITY, a Public Corporation and
Tribally Designated Housing Entity,

               Plaintiff,

vs.

BARBARA ALMQUIST, individually, THE
VILLAGE OF DOT LAKE aka THE
NATIVE VILLAGE OF DOT LAKE,
WILLIAM J. MILLER, CHARLES P.
MILLER and JOHN DOES NO. 1 - 3, all in
their official capacities,

               Defendants.

Case No. 4:06-CV-00018 RRB

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND MOTION FOR TEMPORARY RESTRAINING ORDER

Plaintiff Interior Regional Housing Authority ("IRHA") has moved for the entry of a temporary restraining order and issuance of a preliminary injunction against Defendants Barbara Almquist ("Ms. Almquist"), the Village of Dot Lake aka the Native Village of Dot Lake ("Dot Lake"), William J. Miller ("W. Miller"), Charles P. Miller ("C. Miller"), and John Does No. 1-3 ("John Does") in the above referenced matter. Plaintiff IRHA seeks a Temporary Restraining Order on Count I restraining all Defendants from asserting or

Memorandum in Support of Plaintiff's Motion for Preliminary Injunction and Motion for Temporary Restraining Order
*IRHA v. Almquist, et al.*
4:06-CV-00018 RRB
Page 1

enforcing any tribal law which reduces, undercuts, or negates the rights of Plaintiff IRHA, and specifically asserting the enforceability or applicability of Ordinance No. 06-01-01 in *IRHA v. Almquist,* State District Court Case No. 4FA-06-1421 CI.

## I.    RECORD ON THIS MOTION.

The record on this motion consists of:

- The Affidavit of Steve Ginnis dated June 27, 2006 and filed herewith.

- The Documents Attachments filed June 29, 2006 which are listed as follows:

    1.    Ordinance No. 06-01-01 dated June 1, 2006.  (3 pages).

    2.    Log Notes from hearing held on June 14, 2006 in State District Court Case No. 4FA-06-1421 CI, *IRHA v. Almquist.*  (10 pages).

    3.    Constitution of the Native Village of Dot Lake Alaska, unexecuted.  (8 pages).

    4.    Constitution of the Native Village of Dot Lake Alaska, unexecuted.  (13 pages)

    5.    Letter from Jim Thomas, Acting Director of Tribal Services with the US Department of the Interior, Bureau of Indian Affairs to Shirley Lee at Tanana Chief's Conference, Inc. dated September 16, 1994.  (10 pages).

    6.    Goals & Priorities Spreadsheet – Upper Tanana – Tok 1998 & 1999. (1 page).

    7.    IRHA Summary Allocation for Funding for FY 1998 NAHASDA Activities. (2 pages).

    8.    IRHA Landlord – Tenant Rental Contract dated August 22, 2003. (5 pages).

    9.    Documents pertaining to IRHA's attempts to transfer ownership of Dot Lake Triplex dated October 2004.  (5 pages).

Memorandum in Support of Plaintiff's Motion for Preliminary Injunction and Motion for Temporary Restraining Order
*IRHA v. Almquist, et al.*
4:06-CV-00018 RRB
Page 2

ASCHENBRENNER LAW OFFICES, INC.
P.O. Box 73998, Fairbanks, Alaska 99707-3998
Phone: 907-456-3910  Fax: 907-456-8064

10.    Letter from Wayne Mundy to Michael Walleri dated February 21, 2006.    (1 page).

The documents attached are authenticated by Mr. Ginnis except for attachments 2, 3, 4, 5 and 10, which are public records from the files of the Alaska Court System (No. 2) Bureau of Indian Affairs (Nos. 3-5) and the Department of Housing and Urban Development (No. 10).

As noted in the complaint, ALO does not have the CD from the court's last hearing of June 14th at which its decision was rendered in open court.  It has been ordered.

However, the log notes (Doc. Att. 2) are especially quotable and contain the full expression of the judge's efforts to chisel into sharp contours the federal law issue of the enforceability of the tribal ordinance, as Ordinance No. 06-01-01 was the only hurdle between IRHA and a successfully concluded state court eviction action.

## II.    THE DISTRICT COURT HAS JURISDICTION OVER CLAIMS ASSERTED.

This court has jurisdiction over the allegations contained in Count I.   When IRHA pleads a colorable claim arising under the Federal Constitution of Laws, a plaintiff has properly invoked 28 U.S.C. Sec. 1331.  *Bell v. Hood*, 327 US 678, 681-685, 66 S.Ct. 773, 90 L Ed. 939 (1946).  In this case IRHA seeks to evict a tenant for "good cause" based on its own business or economic reasons relying on NAHASDA Sec. 207(a)(5) 25 USC Sec. 4137(a)(5). This relevant section is titled "Lease requirements and tenant selection," and which reads in pertinent part as follows:

> (a)    Leases. --- Except to the extent otherwise provided by or inconsistent with tribal law, in renting dwelling units in affordable housing assisted with grant amounts provided under this Act, the owner or manager of the housing shall utilize leases that ---
> (5)    require that the owner or manager may not terminate the tenancy, during the term of the lease, except for serious or repeated violation of the

ASCHENBRENNER LAW OFFICES, INC.
P.O. Box 73998, Fairbanks, Alaska 99707-3998
Phone: 907-456-3910  Fax: 907-456-8064

Memorandum in Support of Plaintiff's Motion for Preliminary Injunction and Motion for Temporary Restraining Order
*IRHA v. Almquist, et al.*
4:06-CV-00018 RRB
Page 3

terms or conditions of the lease, violation of applicable Federal, State, tribal, or local law, or for other good cause;

The principal claim brought by IRHA is that the Village of Dot Lake cannot adopt a tribal ordinance which deletes one of the landlord's "tools" or claims on which the landlord can seek to recover possession of a unit built with NAHASDA funds. Here Dot Lake deleted "good cause" – meaning economic or business reasons of the landlord – to support an eviction. There is no question that IRHA would have been awarded FED relief because the state court found good cause, but found that the good cause was restricted or, in essence, abrogated by the tribal ordinance.

## III.    ARGUMENT – FEDERAL RULE OF CIVIL PROCEDURE 65 SUPPORTS THE ISSUANCE OF A TEMPORARY RESTRAINING ORDER IN THIS CASE.

Federal Rule of Civil Procedure 65 provides for the issuance of a preliminary injunction or temporary restraining order once the substantive requirements for such relief have been met. Whether to grant or deny a motion for preliminary injunction in a federal case generally rests on a determination and balance of four factors. *See* Wright & Miller, Federal Practice and Procedure 133 (2nd ed. 1995).[1]  The factors are:

(1)    the significance of the threat of irreparable harm to plaintiff if the injunction is not granted;
(2)    the state of the balance between this harm and the injury that granting the injunction would inflict on defendant;
(3)    the probability that plaintiff will succeed on the merits; and
(4)    the public interest.

*See e.g., Pottgen v. Missouri State High School Activities Ass'n*, 40 F.3d 926 (8th Cir. 1994);

*Hughes Network Systems, Inc. v Interdigital Communications Corp.*, 17 F.3d 691 (4th Cir.

---

[1] "The policies that bear on the propriety of granting a preliminary injunction rarely are discussed directly in the cases. Instead, they are taken into account by the court considering a number of factors that have been found useful

Memorandum in Support of Plaintiff's Motion for Preliminary Injunction and Motion for Temporary Restraining Order
*IRHA v. Almquist, et al.*
4:06-CV-00018 RRB
Page 4

ASCHENBRENNER LAW OFFICES, INC.
P.O. Box 73998, Fairbanks, Alaska 99707-3998
Phone: 907-456-3910  Fax: 907-456-8064

1994); *Storck USA, L.P. v. Farley Candy Co.*, 14 F.3d 311 (7th Cir. 1994); *Stanley v. University of Southern California,* 13 F.3d 1313 (9th Cir. 1994); Wright & Miller, Federal Practice and Procedure 133 (2nd ed. 1995).

### A.   IRHA Will Suffer Irreparable Harm if the Injunction is Not Granted.

IRHA's motions are supported by the accompanying affidavit of Plaintiff's Representative, Steve Ginnis, Executive Director of IRHA, dated June 27, 2006. In general, Ginnis' affidavit details the real, irreparable and immediate injury to IRHA which is threatened by non-party interference with IRHA's contractual rights. Obviously, on occasion IRHA may need to file an eviction action or take collection action against a tribal member; they are the only clients IRHA has for its NAHASDA projects. Aff. Ginnis, ¶4. If the tribe (to which the member is enrolled) can adopt an ordinance or order that overrides federal housing law and regulations or state law and court rules, for example, then any tribal council can stop an eviction of a tribal member by passing a tribal ordinance in the middle of an FED or eviction case, or stop a collection action based on unpaid rent or damages to premises.

But it's worse than that. As in this case, the tribe would not even have to make itself a party to the state court eviction or state court collection lawsuit in order to direct the result that it wants; it merely adopts a rule of decision that commands a result it believes is favorable to the tribal member, all without taking a position in state court. It need not even hire counsel; it can use the services of the defendant's counsel. Finally, of course, this tactical gambit leaves IRHA without any remedy or recourse in state court against such a tribe. For example, IRHA plans to file an ejectment/eviction action early in July in Fairbanks Superior Court (Aff.

---

in deciding whether to grant or deny preliminary injunctions in particular cases." *See* Wright & Miller, Federal Practice and Procedure 131 (2nd ed. 1995).

Memorandum in Support of Plaintiff's Motion for Preliminary Injunction and Motion for Temporary Restraining Order
*IRHA v. Almquist, et al.*
4:06-CV-00018 RRB
Page 5

ASCHENBRENNER LAW OFFICES, INC.
P.O. Box 73998, Fairbanks, Alaska 99707-3998
Phone: 907-456-3910  Fax: 907-456-8064

Ginnis, ¶17) and also has 17 pending collection actions for unpaid rent and damages in state courts in various stages as well as another 53 cases pending for legal review. Aff. Ginnis, ¶18. All IRHA legal actions in state court are threatened by tribal lawmaking, of whatever dignity, which can be asserted by non-parties to such actions and taken as order or ordinance by state courts.

In this case, IRHA's state law FED – with permission under NAHASDA to pursue good cause evictions – was all that IRHA submitted to state court. What IRHA brought against Ms. Almquist was a garden variety eviction; the rental contract provides in Part B-7-d (3) that "After the first month of rental contract, such good cause includes ... (b) A business or economic reason for termination of the tenancy (such as sale of the property, renovation of the unit, the IRHA's desire to rent the unit for a higher rent)." Doc. Att. 8, IRHA Landlord-Tenant Rental Contract. IRHA didn't want to lose money on operating the building; it offered the building to the Dot Lake Tribal Council. They agreed to take it in 2004 and changed their minds in 2006. Aff. Ginnis ¶13-14.

All that IRHA had to do was to satisfy the court as to its "business or economic reason[s] for termination." On the other side of the ledger, all the tribe has to do is to negate or undercut IRHA's proof, by adopting an ordinance that says, *no cause is good enough.*

**B.    The Harm to IRHA Greatly Outweighs Any Potential Harm Defendants Might Face if the Injunction is Granted.**

Defendants can not seriously contend that they were relying on tribal lawmaking in the conduct of any of their financial or business affairs. Ms. Almquist had been through three hearings in the state court eviction proceedings before the ordinance was adopted with her

Memorandum in Support of Plaintiff's Motion for Preliminary Injunction and Motion for Temporary Restraining Order
*IRHA v. Almquist, et al.*
4:06-CV-00018 RRB
Page 6

ASCHENBRENNER LAW OFFICES, INC.
P.O. Box 73998, Fairbanks, Alaska 99707-3998
Phone: 907-456-3910 Fax: 907-456-8064

attorney's efforts. Nothing in her rental contract (Doc. Att. 8) or eviction experience had given

her any hope that a tribal order could reverse the action of state court.

As for the tribal governing body, it has even less expectation that this ordinance would

be taken seriously.  The Village of Dot Lake has not apparently adopted a federally recognized

constitution; it did not join the litigation; it did not hire counsel to assist in writing tribal law.

Doc Att. 3 and 4. It did not, at the time the ground lease was entered into, reserve any right to

create additional legal burdens for the ground lessee, IRHA, who would be the landlord.  Aff.

Ginnis, ¶11.  It did not even have a majority of the funds in the project. Doc. Att. 6 and 7.

Four other villages had the lion's share ($320,000 to Dot Lake's $50,000) and there is no

proof that Dot Lake consulted with these villages before taking sides in the eviction.  Aff.

Ginnis, ¶10.

And of course, most devastating to any reliance argument in the context of TRO or

preliminary injunctive relief, Dot Lake *could take control of the triplex.*  Aff. Ginnis, ¶13;

Doc. Att. 9.  If the Village of Dot Lake is minded to micro-manage tenancies, including

evictions, let it take the building and manage it under its own ordinances. Aff. Ginnis, ¶13.

**C.     It is Highly Likely that IRHA Will Prevail on the Merits of the Case.**

There is not even a glimmer of hope that Ms. Almquist and Dot Lake can prevail.

Congress passed a law; HUD adopted a regulation; IRHA has a rental contract; in all

three, the landlord has the right to terminate the lease for good cause, i.e., for business and

economic reasons. Complaint ¶¶15, 16, and 20; but Dot Lake says that there is no reason on

the landlord's part – business and economic, obviously – that is good enough.  In short, there

Memorandum in Support of Plaintiff's Motion for Preliminary Injunction and Motion for Temporary Restraining Order
*IRHA v. Almquist, et al.*
4:06-CV-00018 RRB
Page 7

ASCHENBRENNER LAW OFFICES, INC.
P.O. Box 73998, Fairbanks, Alaska 99707-3998
Phone: 907-456-3910  Fax: 907-456-8064

cannot be any "good" reason why a landlord could stop operating money-losing rental property.

The relevant HUD regulation supports IRHA's position. 24 CFR Sec.1000.134 governs circumstances in which a "recipient (or entity funded by a recipient) demolish or dispose of current assisted stock."

> (a) A recipient (or entity funded by a recipient) may undertake a planned demolition or disposal of current assisted stock owned by the recipient or an entity funded by the recipient when:
> (1) A financial analysis demonstrates that it is more cost-effective or housing program-effective for the recipient to demolish or dispose of the unit than to continue to operate or own it ... .

The IRHA Landlord-Tenant Rental Contract under which Ms. Almquist claims to be bound, (Doc. Att. 8) provides in Part B-7-d (3) that "After the first month of rental contract, such good cause includes ... (b) A business or economic reason for termination of the tenancy (such as sale of the property, renovation of the unit, the IRHA's desire to rent the unit for a higher rent)." [2]

---

[2] In Defendant's Bench Memorandum filed May 12, 2006, counsel goes into lengthy explanation of how Almquist became a lease-holder (Bench Memo, pp. 2-3). Further, counsel for Almquist states that the terms of the transfer do not require ousting Almquist and that IRHA does not have legitimate grounds to terminate her tenancy, again implying that she is a lease-holder. (Bench Memo, pp. 12).

Counsel again reiterates this position in his Supplemental Reply filed with the court on May 16, 2006, at No. II which is titled: **"There Was Clearly A Lease Relationship"** (emphasis in original) and states that there was amble (sic) reason to believe that a lease relationship existed between IRHA and Ms. Almquist (Supp. Reply, pp. 3). Counsel again goes into a long explanation of all of the events that he believes are indicative of a lease agreement (Supp. Reply, pp. 3-4). He states: "There can be little question that Almquist and IRHA had a tenant / landlord relationship, and if Almquist had not been a "tenant" under the original lease, she has certainly assumed the lease since that time." ..." (Supp. Reply, pp. 4).

Copies of the state court pleadings can be supplied to the court, if necessary.

Memorandum in Support of Plaintiff's Motion for Preliminary Injunction and Motion for Temporary Restraining Order
*IRHA v. Almquist, et al.*
4:06-CV-00018 RRB
Page 8

ASCHENBRENNER LAW OFFICES, INC.
P.O. Box 73998, Fairbanks, Alaska 99707-3998
Phone: 907-456-3910  Fax: 907-456-8064

ASCHENBRENNER LAW OFFICES, INC.
P.O. Box 73998, Fairbanks, Alaska 99707-3998
Phone: 907-456-3910  Fax: 907-456-8064

According to Defendants, federal law, federal regulation, and a federal IHA and tribally designated housing entity's rental contract are to bow before a tribal ordinance adopted during an eviction proceeding to provide a rule of decision.

Section 3, titled "Eviction" of Ordinance No. 06-01-01 states: "[T]he term 'good cause' shall mean the tenants act or failure to act causing harm to the premises, personal property or rights of other tenants, tribal members or the general public, including the quiet enjoyment of real property by other tenants, or adjacent land owners." Doc. Att. 1. In short, the ordinance limits "good cause" to bad tenant behavior and does not include the landlord's financial operating losses.

State District Court Judge Raymond Funk ruled from the bench on June 14th, 2006 (on the fourth non-consecutive day of hearings): "I won't grant the FED. There was an initial lease, then month to month tenancy, then they could for limitations of good cause grant it. The court finds good economic reasons for IRHA to make the decision. Except the court finds the case is controlled by the tribal ordinance I would have granted an eviction a week from today... ." Doc Att 2, page 9. At this time only the log notes are available; a CD has been ordered to prepare a transcript.

Ms. Almquist has therefore obtained – through her counsel – a tribal order or ordinance directing that the state court terminate the eviction proceedings in her favor in state court Case No. 4FA-06-1421 CI, *IRHA v. Almquist*. This ordinance provides support for her argument that the tribal ordinance bars evictions for "good cause" under NAHASDA based upon the financial needs of an Indian Housing Authority or Tribally Designated Housing Entity.

Memorandum in Support of Plaintiff's Motion for Preliminary Injunction and Motion for Temporary Restraining Order
*IRHA v. Almquist, et al.*
4:06-CV-00018 RRB
Page 9

Sec. 4137(a)(5) allows tribes to *add* to the possible violations – bad tenant behavior – which can result in eviction. The state court has ruled that Dot Lake can enforce a tribal ordinance that *subtracts* from the landlord's possible grounds for eviction. In NAHASDA Congress explicitly gave tribes the power to add additional grounds to terminate a lease, but at the same time the state district court has ruled that Congress has implicitly approved a tribal ordinance or order which *reduces, undercuts, or negates* an IHA's grounds for lease termination based on the landlord's good cause to take such action.

The text of Sec. 207(a), 25 USC Sec. 4137(a), titled "Lease requirements and tenant selection," reads as follows:

(a)     Leases. --- Except to the extent otherwise provided by or inconsistent with tribal law, in renting dwelling units in affordable housing assisted with grant amounts provided under this Act, the owner or manager of the housing shall utilize leases that ---

(1)     do not contain unreasonable terms and conditions;

(2)     require the owner or manager to maintain the housing in compliance with applicable housing codes and quality standards;

(3)     require the owner or manager to give adequate written notice of termination of the lease, which shall be the period of time required under State, tribal, or local law;

(4)     specify that, with respect to any notice of eviction or termination, notwithstanding any State, tribal, or local law, a resident shall be informed of the opportunity, prior to any hearing or trial, to examine any relevant documents, records, or regulations directly related to the eviction or termination;

(5)     require that the owner or manager may not terminate the tenancy, during the term of the lease, except for serious or repeated violation of the terms or conditions of the lease, violation of applicable Federal, State, tribal, or local law, or for other good cause; and

(6)     provide that the owner or manager may terminate the tenancy of a resident for any activity, engaged in by the resident, any member of the household of the resident, or any guest or other person under the control of the resident that ---

(A)     threatens the health or safety of, or right to peaceful enjoyment of the premises by, other residents or employees of the owner or manager of the housing;

Memorandum in Support of Plaintiff's Motion for Preliminary Injunction and Motion for Temporary Restraining Order
*IRHA v. Almquist, et al.*
4:06-CV-00018 RRB
Page 10

ASCHENBRENNER LAW OFFICES, INC.
P.O. Box 73998, Fairbanks, Alaska 99707-3998
Phone: 907-456-3910  Fax: 907-456-8064

(B)      threatens the health or safety of, or right to peaceful enjoyment of their premises by, persons residing in the immediate vicinity of the premises; or

(C)      is criminal activity (including drug-related criminal activity) on or off the premises.

This section of NAHASDA makes clear Congress has permitted tribes to make law pertinent to a variety of issues that comes up in landlord-tenant relationships: Take subsubsection (3). If a tribe had adopted an ordinance regarding notice protocol, then the "owner or manager" would be required "to give adequate written notice of termination of the lease, which shall be the period of time required under State, tribal, or local law ... ." Tribes can require that NAHASDA owners or operators give notices, presumably longer than those required by state law.

Moreover, subsubsection (4) provides that an eviction notice should afford "a resident .... of the opportunity, prior to any hearing or trial, to examine any relevant documents, records, or regulations directly related to the eviction or termination ... ." Here, Congress assumes that there may be contrary "State, tribal, or local law"; hence, Congress is obliged to 'direct traffic,' so to speak, by preempting any contrary rule that excuses the failure to give the tenant an opportunity to examine such documents or records. This is further discussed below.

Now take subsubsection (5), which provides that the lease must require that the owner or manager may not terminate the tenancy, during the term of the lease, except for serious or repeated violation of the terms or conditions of the lease, violation of applicable Federal, State, tribal, or local law, or for other good cause ... ." Here Congress allows tribes to adopt additional rules that would make bad or substandard tenant behavior a ground for eviction.

Memorandum in Support of Plaintiff's Motion for Preliminary Injunction and Motion for Temporary Restraining Order
*IRHA v. Almquist, et al.*
4:06-CV-00018 RRB
Page 11

ASCHENBRENNER LAW OFFICES, INC.
P.O. Box 73998, Fairbanks, Alaska 99707-3998
Phone: 907-456-3910  Fax: 907-456-8064

It is well-settled that Congress can grant power to Indian tribes to the exclusion of state authority.  "[W]hen Indian tribes under federal protection seek to regulate their traditional interests, that federal law has preempted state jurisdiction."  *Mescalero Apache Tribe v. New Mexico*, 630 F.2d 724, 730 (10th Cir. 1980), *aff'd* 462 U.S. 324 (1983), citing D. Getches, D. Rosenfelt & C. Wilkinson, Cases and Materials on Federal Indian Law 295-299 (1979).  In *Mescalero*, the 10th Circuit Court of Appeals acknowledged that "[t]he cases stress that regulatory powers in Indian country or on Indian lands belong to the Congress except for inherent jurisdiction of the tribes."  *Id.*

Congress has delegated some very limited subjects to the Village of Dot Lake,  The U.S. Supreme Court held in *Montana v. U.S.*, 450 U.S. 544 (1981) that

> in addition to the power to punish tribal offenders, the Indian tribes retain their inherent power to determine tribal membership, to regulate domestic relations among members, and to prescribe rules of inheritance for members.  But exercise of tribal power beyond what is necessary to protect tribal self-government or to control internal relations is inconsistent with the dependent status of the tribes, and so cannot survive without express congressional delegation. Id. at 564, citing *Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 148 (1973); *Williams v. Lee*, 358 U.S. 217, 219-220 (1959); *United States v. Kagama*, 118 U.S. 375, 381-382 (1886).

In NAHASDA, there is express congressional delegation to IRHA for the purpose of furthering congressional objectives, as evidenced by the existence of the statute itself; this includes the escape clause that permits, if there is "good cause," closing down a building if it is not financially viable, and evicting the tenants.  25 U.S.C. Sec. 4137(a)(5); 24 CFR 1000.134(a)(1).  Dot Lake has no authority to contradict Congress in IRHA's implementation of these provisions.  Even the preamble to 25 U.S.C. Sec. 4137 (a) – "Except to the extent otherwise provided by or inconsistent with tribal law" – does not aid Dot Lake in seeking to

Memorandum in Support of Plaintiff's Motion for Preliminary Injunction and Motion for Temporary Restraining Order
*IRHA v. Almquist, et al.*
4:06-CV-00018 RRB
Page 12

ASCHENBRENNER LAW OFFICES, INC.
P.O. Box 73998, Fairbanks, Alaska 99707-3998
Phone: 907-456-3910  Fax: 907-456-8064

enforce or apply Ordinance No. 06-01-01. True a tribe could permit an IHA to adopt a rental scheme that did not require any cause for landlord terminations; terminations for cause (in this sense) this would be "inconsistent" with such permission, and the tribes could make the landlord's business easier by loosening such requirements. But the tribe that is telling IHA landlords it never will have any cause to stop landlording, as long as the tenants are not misbehaving, is simply deleting federal rights that are granted by law to IHA landlords.

In Sec. 207(a) Congress specifically permitted tribes to make housing law, given certain constraints. In one instance, Congress gave tribes the opportunity to add to IHA's burdens as landlords in Sec. 4137(a)(3) when it provided that tribes can add additional time to notice requirements; in Sec. 4137(a)(4) tribal or state law that might undercut the tenant's pre-trial document inspection opportunity is preempted; finally, Congress gave tribes the opportunity to add to tenant burdens by adding new definitions of bad tenant behavior. Sec. 4137(a)(5).

But Ms. Almquist is arguing is that Dot Lake *also* has implied authority to impose burdens on landlords by negating one of the powers that Congress gave landlords: if they have good cause to close down a building and need to evict the tenants, Ms. Almquist argues, as to a lease or rental agreement already in place, the tribe can now eliminate, mid-trial, the landlord's grounds for eviction. It's worth noting that the landlord's right to close a money-losing building for good cause under Sec. 4137(a)(5) and the tenant's inspection right under Sec. 4137(a)(4) to fit together rather nicely. The tribal member may have a variety of procedural or substantive hurdles to face, if she challenges the merits of the IHA's position that it is losing money. In general, tenants don't need to inspect landlord "documents [or] records" to defend an FED; the FED is based on bad tenant behavior or other similar *in-the-unit*

Memorandum in Support of Plaintiff's Motion for Preliminary Injunction and Motion for Temporary Restraining Order
*IRHA v. Almquist, et al.*
4:06-CV-00018 RRB
Page 13

ASCHENBRENNER LAW OFFICES, INC.
P.O. Box 73998, Fairbanks, Alaska 99707-3998
Phone: 907-456-3910  Fax: 907-456-8064

circumstances. But the landlord has the right to close the building through "good cause" evictions if "a financial analysis demonstrates that it is more cost-effective or housing program-effective for the recipient to demolish or dispose of the unit than to continue to own or operate it ... ." 24 CFR Sec. 1000.134. Here the tenant may have to see the relevant documentary support. In this case IRHA produced two witnesses at trial and a number of exhibits as to the operating losses it was incurring; none of this evidence was contradicted; the state District Court ruled in IRHA's favor on this point, as noted elsewhere. "The court finds good economic reasons for IRHA to make the decision [to close the triplex down]." But if IRHA didn't want to produce this evidence, then Ms. Almquist could have compelled that introduction using the NAHASDA requirements as a sword. Congress afforded Ms. Almquist no opportunity for her to disarm IRHA by getting Dot Lake to adopt a rule that IRHA can't do "good cause" evictions *at all*.

It is obvious that through the enactment of NAHASDA, Congress intended to occupy the field of Indian housing, if funded by NAHASDA, to the exclusion of all other governmental entities, except as it has expressly permitted. This is adequately demonstrated by Sec. 2, "Congressional Findings," where Congress finds in (3): "the Constitution of the United States invests the Congress with plenary power over the field of Indian affairs, and through treaties, statutes, and historical relations with Indian tribes, the United States has undertaken a unique trust responsibility to protect and support Indian tribes and Indian people."

Trying to write "good cause" out of the NAHASDA presents Dot Lake an impossible burden. Congress has well and truly grasped what it is that landlords do in managing their

Memorandum in Support of Plaintiff's Motion for Preliminary Injunction and Motion for Temporary Restraining Order
*IRHA v. Almquist, et al.*
4:06-CV-00018 RRB
Page 14

ASCHENBRENNER LAW OFFICES, INC.
P.O. Box 73998, Fairbanks, Alaska 99707-3998
Phone: 907-456-3910 Fax: 907-456-8064

units; it has given tribes specific roles that they can play in leasing and terminating tenancies at IHA housing.    When Congress speaks at such a precise level of abstraction – notices, discovery, grounds for eviction – then it is impossible for the Defendants to urge that Dot Lake has some implied or reserved right to legislate in this area, especially while a state court eviction action is pending, and, obviously, the tenant is going to lose.

In general, tribes can't interpose themselves in a lawmaking capacity without some invitation from Congress; and they can't undercut or negate or subtract from the rights that landlords were granted by Congress without some invitation from Congress itself, as discussed elsewhere in this memorandum.

### D.    The Public Interest Would be Adversely Affected if the Requested Relief is Not Granted.

Courts have awarded preliminary injunctions when it is necessary to compel the defendant to *correct injury already inflicted* and instructed that the situation be returned to the "last peaceable uncontested status" between the parties.  *See Stemple v. Board of Educ. Of Prince George's County*, 623 F.2d 893, 898 (4th Cir. 1980); *Washington Capitols Basketball Club v. Barry*, 419 F.2d 472 (9th Cir. 1969); Wright & Miller, Federal Practice and Procedure (2nd ed. 1995).

As this court has probably concluded, what Ms. Almquist is really arguing, by advancing tribal Ordinance No. 06-01-01 *as law*, is that this controversy is moot because the underlying dispute has been resolved by the tribe. Turning to the federal cases on this point, Congress does have the power to change substantive law (subject to constitutional limits) even though litigation is pending. In the Ninth Circuit, the leading case is *Gray v First Winthrop,*

Memorandum in Support of Plaintiff's Motion for Preliminary Injunction and Motion for Temporary Restraining Order
*IRHA v. Almquist, et al.*
4:06-CV-00018 RRB
Page 15

ASCHENBRENNER LAW OFFICES, INC.
P.O. Box 73998, Fairbanks, Alaska 99707-3998
Phone: 907-456-3910  Fax: 907-456-8064

989 F.2d 1564 (9th Cir. 1993).  This is readily found from a Westlaw search of *"separation of powers" /20 "dictat!" /20 result OR outcome,* which brought up 29 hits.

In *Gray,* one party challenged Congress's power to change a limitation interval; the paradigm is straight-forward: Congress regulates securities deals and dealers; Congress has adopted statutes of limitation; mid-litigation (as it happens); Congress changes the limitation interval and, thereby, reinstates certain litigation.  The avatar of the challenge (mounted in *Gray*) was first addressed in *United States v. Klein,* 80 US (13 Wall.) 128, 20 L.Ed. 519 (1872) in which the Supreme Court held that Congress could not prescribe a rule of decision in a particular case.

The importance of this caselaw is as follows: There are constitutional limitations on how the legislature can resolve litigation involving parties whose rights were already regulated by law before the lawsuit started.  But even before those limitations are considered, the court will have observed that there was no tribal regulation of landlord or tenant behavior *or tenancies* in Dot Lake, before Ms. Almquist occupied the triplex in August, 2003 and before this eviction suit was filed in March, 2006.  *Gray* requires, for a law to be created and applied mid-suit, at least that the legislature be in the business of regulating its licensees, for example, before it changes the law.

Even now, Dot Lake is not seeking to go into the business of adjusting landlord and tenant rights.  It is not seeking to establish a tribal housing court or to have tribal court take jurisdiction over disputes. It does not even want to be in the landlording business. It simply wants to support Ms. Almquist in whatever way it can – fair enough – but it wants to help her by telling a state court how to decide the case and re-writing NAHASDA.

Memorandum in Support of Plaintiff's Motion for Preliminary Injunction and Motion for Temporary Restraining Order
*IRHA v. Almquist, et al.*
4:06-CV-00018 RRB
Page 16

ASCHENBRENNER LAW OFFICES, INC.
P.O. Box 73998, Fairbanks, Alaska 99707-3998
Phone: 907-456-3910  Fax: 907-456-8064

Here is the timeline in question: when the court addressed the parties on May 30, 2006, it indicated that IRHA had made a showing as to financial hardship from continued operation of the triplex *or* lack of financial viability at this time for continued operation of the triplex. If Ms. Almquist was leasing on a year-to-year lease, then all parties agree that IRHA was obliged to show good cause to terminate the tenancy, under NAHASDA. IRHA says that "good cause" includes lack of financial viability under Sec. 4137, if only because the HUD regulations recognize termination or suspension of operations of low income housing.

### E.    Factors Weighed Together Promote a Grant of the Requested Relief.

On balance, the factors weigh in favor of granting the requested preliminary injunction. IRHA is currently suffering and will continue to suffer irreparable harm to its right and duties to conduct solvent, if possible, financial operations at NAHASDA housing that it owns. The harm to IRHA greatly outweighs any burden that Defendants will suffer should the injunction be granted. There is a great likelihood that IRHA will prevail on the merits of the case. Finally, the public interest would be adversely affected if the requested relief is not granted.

When the balance of the factors is so clearly weighted in favor of granting the requested injunctive relief, the relief should be granted. *See* Wright & Miller, Federal Practice and Procedure (2nd ed. 1995); *see also Cohen v. Brown Univ.*, 991 F.2d. 888 (1st Cir. 1993)(Female athletes suing university under Title IX for preliminary injunction barring university from dropping sports teams satisfied requirement that harm to them exceeded harm to university.), *Jak Productions, Inc. v. Wiza*, 986 F.2d 1080 (7th Cir. 1993)(Former employer was entitled to injunctive relief to enforce non-competition clause of employment contract where there was a large market in which former employee could obtain customers without

Memorandum in Support of Plaintiff's Motion for Preliminary Injunction and Motion for Temporary Restraining Order
*IRHA v. Almquist, et al.*
4:06-CV-00018 RRB
Page 17

ASCHENBRENNER LAW OFFICES, INC.
P.O. Box 73998, Fairbanks, Alaska 99707-3998
Phone: 907-456-3910  Fax: 907-456-8064

contacting former employers customers.), *White Mountain Apache Tribe v. Arizona, Dep't of Game & Fish*, 649 F.2d 1274 (9th Cir. 1981)(Tribe was entitled to preliminary injunction preventing state from enforcing hunting and fishing license requirements against non-Indians on reservations because there were serious questions raised in tribe's suit and the disparity in resources between the tribe and the state found in favor of the tribe.)

## V.   COMMENTS ON COUNT II – PENDENT STATE CLAIMS.

IRHA does not seek TRO or preliminary injunctive relief on Count II at this time. Indeed, it is simply not known at this stage what position the Village of Dot Lake might wish to take on Count II.  In fact, it is a little problematic how the Village of Dot Lake (if it is not properly organized) can take any position in any litigation.  In this case, the court may or may not be invited by Dot Lake to address first the pendent law claims over which this court also has jurisdiction under 28 U.S.C. Sec. 1367.

Under that statute, federal courts may exercise supplemental jurisdiction over state law claims linked to a claim based upon federal law.  *Arbaugh v. Y & H Corp*, ___ U.S. ___, 126 S Ct. 1235, 1240 (2006).    The Supreme Court's holding applies to any claims based upon federal law, to wit:

> Plaintiffs suing under Title VII may avail themselves of the opportunity §1367 provides to pursue complete relief in a federal-court lawsuit.  Arbaugh did so in the instant case by adding to her federal complaint pendent claims arising under state law that would not independently qualify for federal-court adjudication. *Id*.

Dot Lake may invite resolution of Count II if the governing body does not wish to assert in federal court that Ordinance No. 06-01-01 is binding tribal law.  In that case, IRHA will probably have obtained enough immediate relief to resolve the Almquist state court case

Memorandum in Support of Plaintiff's Motion for Preliminary Injunction and Motion for Temporary Restraining Order
*IRHA v. Almquist, et al.*
4:06-CV-00018 RRB
Page 18

ASCHENBRENNER LAW OFFICES, INC.
P.O. Box 73998, Fairbanks, Alaska 99707-3998
Phone: 907-456-3910  Fax: 907-456-8064

and any other state court issues that arise. This court would then have to deal with any mootness issues. Obviously there is only one legislature for the state of West Virginia, and if it repeals an offending statute, then the controversy is probably over. *Buckhannon Bd. And Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 US 598, 121 S. Ct. 1835, 149 L.Ed. 2d 855 (2001). There are many tribal entities in Alaska: a count of the official listing is at 70; Fed. Register 226 (November 25, 2002) shows 229. This issue could certainly arise again anywhere in the state even if one tribe repealed or disavowed this ordinance.

There are many businesses in rural Alaska, from utility companies and trading companies to air taxi services and housing authorities, which, in essence, extend credit to persons who may be able to void their obligations or make enforcement so difficult as to render the relationship uneconomic, if they can pull the right strings with a tribal council.

## VI.    CONCLUSION

The TRO and Preliminary Injunction, as lodged, should be entered by this Court.

DATED at Fairbanks, Alaska this 27 day of June, 2006.

ASCHENBRENNER LAW OFFICES, INC.
Attorneys for Plaintiff IRHA

By: _____
        Peter J. Aschenbrenner
        Bar No. 7210037

ASCHENBRENNER LAW OFFICES, INC.
P.O. Box 73998, Fairbanks, Alaska 99707-3998
Phone: 907-456-3910 Fax: 907-456-8064

Memorandum in Support of Plaintiff's Motion for Preliminary Injunction and Motion for Temporary Restraining Order
*IRHA v. Almquist, et al.*
4:06-CV-00018 RRB
Page 19