
Peter J. Aschenbrenner
Aschenbrenner Law Offices, Inc.
Physical address: 823 Third Avenue, Fairbanks, Alaska  99701
Mailing address: P.O. Box 73998, Fairbanks, Alaska  99707
Telephone (907) 456-3910 • Fax: (907) 456-8064
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| INTERIOR REGIONAL HOUSING AUTHORITY, a Public Corporation and Tribally Designated Housing Entity,<br><br>     Plaintiff,<br><br>vs.<br><br>BARBARA ALMQUIST, individually, THE VILLAGE OF DOT LAKE aka THE NATIVE VILLAGE OF DOT LAKE, WILLIAM J. MILLER, CHARLES P. MILLER and JOHN DOES NO. 1 - 3, all in their official capacities,<br><br>     Defendants. | Case No. 4:06-CV-00018 RRB |

### REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND MOTION FOR TEMPORARY RESTRAINING ORDER

Plaintiff Interior Regional Housing Authority ("IRHA") hereby files its Reply in Support of Plaintiff's Motion for Temporary Restraining Order as required by this court's minute order of July 7, 2006.

I. **Status of the case**

Count One of IRHA's two-count Complaint requests entry of a temporary restraining order against all Defendants, Barbara Almquist ("Almquist"), the Village of Dot Lake aka the

Reply in Support of Plaintiff's Motion for Preliminary Injunction and Motion for Temporary Restraining Order
*IRHA v. Almquist, et al.*
4:06-CV-00018 RRB
Page 1

Native Village of Dot Lake ("Dot Lake"), William J. Miller ("W. Miller"), Charles P. Miller ("C. Miller"), and John Does No. 1-3 ("John Does"). The Temporary Restraining Order requested in Count I would restrain all Defendants from asserting or enforcing any tribal law which reduces, undercuts, or negates the rights of Plaintiff IRHA, and specifically from asserting the enforceability or applicability of Ordinance No. 06-01-01 in *IRHA v. Almquist,* State District Court Case No. 4FA-06-1421 CI.

Attorney Michael J. Walleri has entered his appearance for Defendant Almquist; attorney Mark Andrews has entered his appearance for Defendants Dot Lake and W. Miller. C. Miller is, as of this date, unrepresented by counsel.

**II.     Argument**

    *A.     This court should not abstain under either the Younger or the Rooker-Feldman doctrine from deciding the motion for TRO.*

Defendants argue that the federal court must dismiss this action under the *Younger* abstention doctrine and the *Rooker-Feldman* doctrine.

    *B.     Defendant Almquist's reliance on Younger Doctrine is misplaced.*

Ms. Almquist argues that these proceedings in federal court violate the *Younger* doctrine, as they constitute federal interference with an ongoing state landlord-tenant proceeding. As discussed and meticulously analyzed in *Columbia Basin Apt. Ass'n v. City of Pasco,* 268 F.3d 791 (9th Cir. 2001), the case cited by Defendant Almquist, "the Younger principle applies [when] important state interests are involved." *Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 627, 106 S.Ct 2718 (1986). [cited in *Columbia Basin Apt. Ass'n* at 799] "Younger abstention is required if the state proceedings are (1) ongoing, (2) implicate important state interests, and (3) provide the plaintiff an adequate

Reply in Support of Plaintiff's Motion for Preliminary Injunction and Motion for Temporary Restraining Order
*IRHA v. Almquist, et al.*
4:06-CV-00018 RRB
Page 2

opportunity to litigate federal claims." *H.C. v. Koppel,* 203 F.3d 610, 613 (9th Cir. 2000) [cited in *Columbia Basin Apt. Ass'n* at 800].

"Younger and [its progeny] express equitable principles of comity and federalism. They are designed to allow the State an opportunity to 'set its own house in order' when the federal issue is already before a state tribunal. It may not be argued, however, that a federal court is compelled to abstain in every such situation...." *Id.*

Most significantly, "Younger abstention ordinarily would not apply when a federal plaintiff also is the plaintiff in state court." *Id.* at 801, quoting from *Confederated Salish v. Simonich*, 29 F.3rd 1398, 1405 (9th Cir. 1994) (holding that the district court did not err in refusing to abstain under Younger where the federal plaintiff, who was also the state court plaintiff, did not seek to restrain state proceedings or invalidate a state law).

Of course, in the paradigm *Younger* case the federal plaintiff is seeking to enjoin state defendants. In this case, the only state actor, Hon. Ray Funk, state District Court judge, has made clear that he would grant the eviction but for the conduct of the tribal defendants (who are parties to this case, but not the state FED case). Nothing in this litigation seeks to restrain Judge Funk or any state actor from doing some act or to compel him to do an act which he found contrary to state law. The practical and legal effect of the granting of this motion would be to free him from unnecessary subservience to a questionable tribal ordinance that plaintiff believes should not have played a role in his decision-making.

Moreover, in the present case, the state court plaintiff and federal court plaintiff are the same entity; the plaintiff is not seeking to restrain state proceedings or invalidate a state law; no issues of comity or federalism have been claimed; and no state issues are at issue. The

Reply in Support of Plaintiff's Motion for Preliminary Injunction and Motion for Temporary Restraining Order
*IRHA v. Almquist, et al.*
4:06-CV-00018 RRB
Page 3

issue before this court is whether a native village has the right to adopt regulations limiting and controlling the authority of IRHA to obtain FED relief *after* the NAHASDA grant funds have been spent on building the housing unit occupied by the plaintiff, a ground lease with Defendant Dot Lake and tenancy with Defendant Almquist were entered into and, finally, after the state court has commenced summary eviction proceedings.

In its ruling, the state District Court noted that but for the tribe's adoption of an ordinance (drafted and adopted for the express purpose of preventing this FED), then an eviction would have been granted. Essentially, the State District Court took the position that its own hands were tied as the complex issues before it were not ones that the state courts have authority to resolve.

The United States Supreme Court has expressly noted that the *Younger* doctrine is inapplicable in such situations. In *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854 (1975), the plaintiffs, criminal defendants being held over for trial, brought a federal court action claiming that the State of Florida's failure to conduct preliminary hearings in their particular circumstances violated their federal constitutional rights. This claim could not be brought in the state court actions, simply because no procedural opportunity existed for them raise it in the cases that the state court plaintiff – the state – had filed against them.

Defendants' assertion of the *Younger* doctrine as a preclusion to the federal action was rejected on appeal, which concluded that the federal issues raised could not be raised in the state court criminal prosecutions; and thus the federal action would not prejudice the conduct of the underlying trial on the merits. 420 U.S. at 108.

Reply in Support of Plaintiff's Motion for Preliminary Injunction and Motion for Temporary Restraining Order
*IRHA v. Almquist, et al.*
4:06-CV-00018 RRB
Page 4

In this case, the state court party (in this case, plaintiff IHRA) has no state court procedural avenue in which to challenge, or address, or obtain declaratory relief as to the applicability or validity of Tribal Ordinance 06-01-01 and much less the federal questions raised on the face of the ordinance. Under *Gerstein*, the lack of state court remedy defeats abstention otherwise suggested by the *Younger* doctrine.

In sum, the *Younger* doctrine is inapplicable to the present case.

C.    *The Rooker-Feldman doctrine does not preclude this action.*

Dot Lake argues *Rooker-Feldman* to the effect that the IRHA must pursue its claims solely through the state appellate courts. As argued below, an FED proceeding affords neither side the opportunity to litigate the issues Ms. Almquist raised (but did not resolve) through the adoption of the Tribal Ordinance on the eve of her eviction.

In this procedural context, it is of pivotal weight that Dot Lake refused to join in the state court action and now seeks to prevent the federal action from proceeding. Dot Lake wished to prevent IRHA from evicting Ms. Almquist, and adopted an ordinance during the course of the eviction action which it admitted was designed to thwart the FED. Yet the Village declined to join in the action to argue the validity or enforceability of its ordinance; more to the point, Dot Lake refused to take any steps in state or federal court to uphold the validity of its own ordinance, despite the fact that the ordinance expressly confers that power.[1]

Now, Dot Lake has filed a Response in Opposition to the IRHA's federal action, claiming that the issues before the federal court – including the issues of validity and enforceability of its own ordinance – are issues of state law and not federal law. In other

---

[1] "Sec. 5 Enforcement; Attorney Fees. The terms of this ordinance may be enforced in tribal, state or federal court." Ordinance No. 06-01-01; Doc. Att. 1.

Reply in Support of Plaintiff's Motion for Preliminary Injunction and Motion for Temporary Restraining Order
*IRHA v. Almquist, et al.*
4:06-CV-00018 RRB
Page 5

words, the Village claims that its ordinance can be asserted as a sword to prevent a state eviction, while it is immune from state court jurisdiction. It also claims that federal courts are not the appropriate forum for settling the questions of legitimacy and enforceability of its ordinance, since the ordinance is one governing landlord-tenant and housing, which are state court issues. True, unless and until the Village intruded its lawmaking into an eviction on the verge of resolution in state court.

> D.    *FED proceedings do not afford landlords the opportunity to obtain declaratory and injunctive relief against non-parties.*

The jurisdiction of state district court is defined by AS 22.15.030 titled "Civil jurisdiction" which provides in subsection (a) as follows:

> The district court has jurisdiction of civil cases, including foreign judgments filed under AS 09.30.200 and arbitration proceedings under AS 09.43.170, as follows: (6) for the recovery of the possession of premises in the manner provided under AS 09.45.070 - 09.45.160 when the value of the arrears and damage to the property does not exceed $100,000;

The statutory framework also makes clear that state district courts lack power to grant injunctive relief, or indeed entertain any request involving an equitable remedy. AS 22.15.050 titled "Actions not within civil jurisdiction" provides in pertinent part: "The jurisdiction of the district courts does not extend to … (2) … actions of an equitable nature, except as otherwise provided by law."

The shape of the FED proceeding is discussed most thoroughly in *Vinson v. Hamilton*, 854 P.2d 733 (Alaska 1993)[FED proceeding is equitable in nature; no right to jury trial]. FED proceedings, for both commercial and residential tenancies (i.e., possessory interests) are developed from AS 9.45.070, which provides in full as follows:

Reply in Support of Plaintiff's Motion for Preliminary Injunction and Motion for Temporary Restraining Order
*IRHA v. Almquist, et al.*
4:06-CV-00018 RRB
Page 6

> When a forcible entry is made upon a premises, or when an entry is made in a peaceable manner and the possession is held by force, the person entitled to the premises may maintain an action to recover the possession.

Basically, the FED in Alaska is an equitable remedy designed to accomplish three principal points.

1. To restrict the landlord's right of and resort to self help; in short, to replace both strong-arm tactics by the landlord and his common law ejectment action.

2. To provide summary adjudication of those few situations in which there is an actual dispute of fact as to the tenant's right to remain on the premises.

3. To permit a narrow class of counterclaims involving the nonpayment of rent, but not require the tenant to bring counterclaims in the FED. "First, counterclaims may be raised only if the action involves nonpayment of rent." *Vinson*. at 738, FN11.

There are other features of the FED proceeding.

(a) It is extremely short-fused proceeding, as noted above. Civil Rule 85(a)(2) provides in pertinent part that "The date set for the eviction hearing shall be not more than 15 days from the date of filing of the complaint unless otherwise ordered by the court."

(b) There is no right to a trial by jury. *Id*. at 735.

(c) The granting of continuances is strictly regulated; a distinction is made between the garden variety continuance requiring posting of a bond and the request to allow counsel to assist in defense. "Therefore, good cause exists to grant a continuance when to do otherwise would hinder a party's ability to prepare her case in good faith." *Id*.

Reply in Support of Plaintiff's Motion for Preliminary Injunction and Motion for Temporary Restraining Order
*IRHA v. Almquist, et al.*
4:06-CV-00018 RRB
Page 7

(d)     No adjudication of a home-owner's rights (under a HUD homeownership program) is allowed. *Kopanuk vs. AVCP Regional Housing Authority*, 902 P.2d 766 (Alaska, 1995).

As *Vinson* clearly demonstrates, the case-in-chief and allowable defenses are highly stylized and regulated; the plaintiff need only show a superior right to possession, based on notices (notice was conceded in this case) under AS 9.45.090 while the tenant is afforded no opportunity to seek a declaratory judgment, since the case will typically be filed in the state District Court. AS 22.10.020(g) provides as follows:

> In case of an actual controversy in the state, the superior court, upon the filing of an appropriate pleading, may declare the rights and legal relations of an interested party seeking the declaration, whether or not further relief is or could be sought. The declaration has the force and effect of a final judgment or decree and is reviewable as such. Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against an adverse party whose rights have been determined by the judgment.

In this case, plaintiff IRHA was obliged under its own lease to prove "good cause" for termination, which it did and the judge so found. What IRHA brought against Ms. Almquist was an eviction, based upon enforcement of its rights under a rental contract which provided in Part B-7-d (3) that "After the first month of rental contract, such good cause includes … (b) A business or economic reason for termination of the tenancy (such as sale of the property, renovation of the unit, the IRHA's desire to rent the unit for a higher rent)." Doc. Att. 8, IRHA Landlord-Tenant Rental Contract.

However, Ms. Almquist was able to get a non-party to the lease, the Village of Dot Lake, to adopt a tribal ordinance on June 1, 2006, after three days of hearings, that commands that no business and economic cause IHRA may show is good enough cause to evict Ms.

Reply in Support of Plaintiff's Motion for Preliminary Injunction and Motion for Temporary Restraining Order
*IRHA v. Almquist, et al.*
4:06-CV-00018 RRB
Page 8

Almquist despite what the lease says on its face. This ordinance was adopted in the midst of the FED action: after the ground lease and tenancy had been entered into, in 1999 and 2003 respectively, and after the hearing of the FED began. As the ordinance was drafted for the purpose of protecting Ms. Almquist's right to possession, it expressly provides that it applies to any tenancy in which a judgment of possession has not yet been entered, even though an action for possession may be underway.

There was no tactical opportunity for IRHA or Ms. Almquist to indulge in the filing of counterclaims, or third party practice; there was no power in the District Court to enter a declaratory judgment concerning the ordinance or issue injunctive relief restraining any party or non-party; and there was no right of the tribal council to intervene in the FED proceedings.

In short, instead of a "summary hearing on possession alone" under the FED statutory scheme, what Ms. Almquist and Dot Lake achieved was a truncated proceeding in which the District Court obeyed the "order" (as Judge Funk referred twice to it) of the tribal council not to evict Ms. Almquist. Or to put it another way, the state statutory FED scheme exists for the purpose of allowing the landlord to show its superior right to possession, through assertion of its contract rights (if it has a lease); as modified by the Dot Lake ordinance, the proceeding loses that character and no longer serves any statutory purpose. There is, simply put, no point in having a lease with any tenant or occupant in a unit owned by IRHA at Dot Lake because the landlord's rights can be voided at any time up to the time that a judgment is entered enforcing them.

Reply in Support of Plaintiff's Motion for Preliminary Injunction and Motion for Temporary Restraining Order
*IRHA v. Almquist, et al.*
4:06-CV-00018 RRB
Page 9

> III.   *Dot Lake Village Council Does Not Have Tribal Sovereign Immunity In This Case.*

Dot Lake Village Council ("Council") and Ms. Almquist have both asserted that Dot Lake is immune from suit under the doctrine of tribal sovereign immunity. The Council offers no support for its position, while Ms. Almquist cites cases which have no relevance under the circumstances of this case. Either way, the argument is untenable.

The question whether or not Alaska Native villages are possessed of tribal sovereignty to the extent they may assert sovereign immunity was fully addressed in *Native Village of Stevens v. Alaska Management and Planning*, 757 P.2d 32 (Alaska 1988) in which the Alaska Supreme Court held that Alaska Native villages cannot assert sovereign immunity because they are not self-governing or in any meaningful sense sovereign. *Id*. at 34.

In *John v. Baker*, 982 P.2d 738 (Alaska 1999), the Alaska Supreme Court reversed its decision in *Native Village of Stevens* in light of the Department of the Interior's adoption of a tribal list and the 1994 Tribal List Act. (at 750). That hardly extinguishes the issues here, because IRHA argues that William Miller and Charles Miller lack authority to act for the Village of Dot Lake in a matter committed to federal law by Congress, and their conduct consists of interfering with IRHA's federal rights under NAHASDA. *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)[establishing fiction that suits against state actors violating federal rights is not a suit against the state].

Indeed, in this case, unlike in *John v. Baker*, there is an "express congressional delegation" of a lawmaking right (at 752) (i.e., 25 USC Sec. 4137(a), Sec. 207(a)), which could not possibly be interpreted to allow tribal leaders to create a "rule of decision" for state courts in eviction proceedings. In short the conduct of the Millers as tribal leaders was *ultra*

Reply in Support of Plaintiff's Motion for Preliminary Injunction and Motion for Temporary Restraining Order
*IRHA v. Almquist, et al.*
4:06-CV-00018 RRB
Page 10

*vires* and unauthorized; hence when acting beyond the scope of their authority they are subject to constraint by any court of competent jurisdiction and especially this one. This is not a suit for tort or other monetary relief, but only to declare the rights and liabilities of the parties and command and/or restrain them accordingly.

If there is any authority to act – and immunity following thereon – it is because Congress has authorized tribes to carry out federal programs and especially housing programs. But still there is no particular reason why Congress must or should grant immunity to Alaska native villages who play a role in federal Indian housing programs, and of course, NAHASDA does not say that they have immunity. Again, if as a substantive matter, the tribal president for example lacks authority (under the tribal constitution which may not exist) or under NAHASDA to direct a state court to un-evict a tribal member, then *he* has no immunity to assert before this court as a procedural bar to this court going forward and granting such relief as it deems appropriate.

All parties agree that the Village of Dot Lake is a federally recognized native entity of Alaska. See Complaint, ¶7; Almquist Opposition, ¶Ia; Dot Lake Opposition, ¶2; 70 Fed. Reg. 71194, 71197 (November 25, 2005). But just because the Village of Dot Lake is a recognizable federal grant recipient doesn't make its officers inherently or recognizably immune from suit and, most importantly, beyond searching inquiry as to why they believed they could interfere with a state court proceeding which was about to enter judgment against not it, but a tribal member.

The attorneys who have asserted sovereign immunity as a defense to the issuance of TRO relief are both aware of their Federal Rule, Civil Rule 11 obligations and must be also

Reply in Support of Plaintiff's Motion for Preliminary Injunction and Motion for Temporary Restraining Order
*IRHA v. Almquist, et al.*
4:06-CV-00018 RRB
Page 11

aware that tribal sovereign immunity is limited to acts within the scope of *some* authority – here, arguably, that defined by Congress.  If these attorneys actually thought that these acts were within the scope of the tribe's authority, they would have said so, not just legally but also factually and if they thought the tribe had the authority to direct results in favor of tribal members by issuing orders to state courts, they would have also said so.  In short, the Defendants could have addressed a myriad of factual and legal issues that arise about when a rule of decision is developed by a lawmaking authority to direct the outcome of a civil proceeding.

In this light, the silence of the Defendants is appalling.  They must know some of the answers that would direct intelligent inquiry but chose to take the position that a tribal member is immune, in effect, from suit because the tribe has taken her side in a dispute.  Only this court can correct the immediate and irreparable injustice that the Defendants set in motion.

Ms. Almquist is a defendant in both federal and state court actions.  In neither action did she claim immunity from suit.  She has none.  However, Defendants William Miller and Charles Miller used the name of the Defendant Village of Dot Lake so as to give her immunity from an adverse result in a state court eviction proceeding; when Defendants Almquist, Dot Lake and W. Miller were challenged, they claim that the Village of Dot Lake has tribal sovereignty and immunity from suit.  In the most general terms no one disputes that.  But, specifically, is sovereign immunity a commodity that can be rented or loaned out to other than actors in tribal government?  If sovereign immunity becomes an issue, it is because the Defendants raised it as such, and they have the burden of showing how immunity for the tribe and its actors compels an adverse result for IRHA in a state court eviction proceeding.

Reply in Support of Plaintiff's Motion for Preliminary Injunction and Motion for Temporary Restraining Order
*IRHA v. Almquist, et al.*
4:06-CV-00018 RRB
Page 12

**VI.  CONCLUSION**

The Temporary Restraining Order, as lodged, should be entered by this Court.

DATED this 12th day of July, 2006.

                         ASCHENBRENNER LAW OFFICES, INC.
                         Attorneys for Plaintiff IRHA

                         By:   /s/ Peter J. Aschenbrenner
                               Peter J. Aschenbrenner
                               Bar No. 7210037

**Certificate of Service**

The undersigned hereby certifies that on the 12th day of July, 2006, the foregoing document was served via ECF/Mail on:

Michael J. Walleri, Esq.
Mark Andrews, Esq.

and served by first class mail on:

Charles Miller
c/o Dot Lake Tribal Council
P.O. Box 2279
Dot Lake, AK  99737


By:    /s/  Peter J. Aschenbrenner
        Peter J. Aschenbrenner

Reply in Support of Plaintiff's Motion for Preliminary Injunction and Motion for Temporary Restraining Order
*IRHA v. Almquist, et al.*
4:06-CV-00018 RRB
Page 13