Mark Andrews, Esq.
Acting General Counsel
Tanana Chiefs Conference
122 First Avenue  Suite 600
Fairbanks, Alaska  99701
Telephone (907) 452-8251, ext 3177
Fax (907) 459-3953
e-mail: mark.andrews@tananachiefs.org


IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA


Interior Regional Housing Authority,

              Plaintiff,

Vs.

Barbara Almquist, et al.

              Defendants
_____/    Case No. 4:06-CV-00018 (RRB)


Memorandum In Support of Motion to Dismiss
by Native Village of Dot Lake, William J. Miller and Charles Miller

The Dot Lake defendants move to dismiss the Complaint.  There is no

private cause of action available under 25 U.S.C. §4137.  For purposes of this

motion, the factual statements in the Complaint are assumed to be true.

Table of Contents

Summary. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

A. The Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

B. There is no cause of action expressly granted under 25 U.S.C. §4137. . . . .   4

C. A basis for federal jurisdiction cannot be implied into 25 U.S.C. §4137. . .  11

     *1.  The statute was not enacted for the benefit of a special class
     of which the plaintiff is a member.* . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

     *2.  There is an indication of legislative intent, both explicit
     and implicit, to deny a statutory remedy.* . . . . . . . . . . . . . . . . . . . . . . .18

     *3.  Implying a private remedy would frustrate the underlying
     purpose of the legislative scheme.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

     *4.  Implying a federal remedy is inappropriate because federal
     remedies would interfere with matters traditionally relegated
     to the control of semisovereign Indian tribes.* . . . . . . . . . . . . . . . . . . . 22

Conclusion . . . . . . . . . . .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Summary

The Complaint asserts federal question jurisdiction.  28 U.S.C. §1331.  For its substantive claim, plaintiff Housing Authority asserts a violation of one section of the Native American Housing and Self-Determination Act, 25 U.S.C. §4137. However, by its express terms, that Section grants no access to the federal courts. Accordingly, the Complaint fails to state a federal question.  *Touche Ross & Co. v Redington*, 442 U.S. 560 (1979).

Access to federal courts, if it exists at all, must be read into the statute.  The rule for finding a federal remedy, given Congressional silence, is found in *Cort v. Ash,* 422 U.S. 66 (1975).  The Ninth Circuit applies the four *Cort* factors. *Solomon v. Interior Regional Housing Authority*, 313 F.3d 1194 (9th Cir. 2002). None of these factors favors the existence of a federal remedy under Section 4137.

In the absence of any statute which might create a federal claim, the Housing Authority has no claim under the laws of the United States.

A.  The Complaint

Plaintiff Housing Authority asserts jurisdiction under 28 U.S.C. §1331. Complaint, ¶12.  Section 1331 is indeed the vehicle by which the District Court may hear a federal question.  However, Section 1331 does not create a federal claim.  A federal claim, if it exists at all, must be found in the substantive

provisions of the Constitution or laws of the United States.  The Housing Authority has no such federal authority in its support.

For the content of its claim, Plaintiff relies on one and only one federal statute, 25 U.S.C. §4137 ("Section 4137").  Complaint ¶¶15, 21; Request for Relief ¶1.  Accordingly, that statute becomes the focus of this motion.

B. There is no cause of action granted expressly in 25 U.S.C. §4137.

Section 4137 does not grant a cause of action to anyone.  The section is entitled "Lease requirements and tenant selection."  Section 4137(a) governs the lease terms used by the owner or manager of the housing.  Section 4137(b) governs the methods by which the owner or manager selects tenants and homebuyers.  Nothing in the section grants access to the courts of the United States.

As pertinent here, Section 4137 reads:

(a) Leases

Except to the extent otherwise provided by or inconsistent with tribal law, in renting dwelling units in affordable housing assisted with grant amounts provided under this chapter, the owner or manager of the housing shall utilize leases that—

….

(5) require that the owner or manager may not terminate the tenancy, during the term of the lease, except for serious or repeated

violation of the terms or conditions of the lease, violation of applicable Federal, State, tribal, or local law, or for other good cause…

To cover this point completely, it is useful to examine other parts of NAHASDA which do in fact grant federal remedies in other circumstances.  When Congress intended to grant jurisdiction to the federal courts under NAHASDA, Congress did so expressly.  NAHASDA authorizes the Secretary of Housing and Urban Development to penalize tribes or housing authorities ("recipients") who fail to comply with regulations.  25 U.S.C. 4161(a).

A recipient who is so penalized may appeal to the United States Court of Appeals.  25 U.S.C. 4161(d).  Congress was careful to add provisions governing procedure in the appeals court and the remedies available.  25 U.S.C. §4161(d)(2), (3).  Congress took the extraordinary step of allowing the Court of Appeals to supplement the record after the appeal, 25 U.S.C. §4161(3)(A), despite case law that heavily disfavors supplementing a federal appellate record.  *Lowry v. Barnhart*, 329 F.3d 1019, 1024-26 (9th Cir. 2003).  Finally, Congress provided that the final judgment of the Court of Appeals is subject to review upon writ of certiorari by the United States Supreme Court.  25 U.S.C. §4161(d)(4).

Congress granted the only other set of federal remedies to the Secretary of Housing and Urban Development and to the Attorney General of the United

States.  NAHASDA provides for remedies when a recipient of assistance fails to substantially comply with NAHASDA.  25 U.S.C. §4161.  After review, the Secretary may refer the matter to the Attorney General with a recommendation to institute a civil matter.  25 U.S.C. §4161(c).  The same subsection authorizes the Attorney General to file the action in United States District Court.  *Id*.

Contrast these provisions with the section at issue here, 25 U.S.C. §4137. Concerning federal jurisdiction, the section is silent.  One subsection requires adequate notice of termination under "State, tribal, or local law."  25 U.S.C. §4137(a)(3).  A second subsection permits the tenant to inspect records relating to the eviction before any hearing or trial, "notwithstanding any State, tribal, or local law".  25 U.S.C. §4137(a)(4).  Neither one of these subsections, even the one mentioning a trial, says that the federal courts have jurisdiction over a dispute.

Congress allows owners and managers to evict tenants for serious or repeated violations of "Federal, State, tribal, or local law".  25 U.S.C. §4137(a)(5). This subsection does not grant jurisdiction to the courts of the United States, nor does it create a federal cause of action.  The subsection allows evictions in response to convictions for Federal crimes, for example, which is simply the common sense of the matter.  At most, Section 4137 has been cited to support the finding that Congress did not intend to exempt the tribal housing entities from Federal drug laws.  *United States v. Milk*, 281 F.3d 762, 768 (8th Cir. 2002) (citing

25 U.S.C. §4137(a)(6)(C)).  Subsection 4137(a)(5) does not create a substantive

right which gives rise to a cause of action.

Section 4137 is the expression of Congress that tenants shall have the

benefit of certain lease terms when the tenants enter public housing.  There is no

suggestion that the forum for interpreting those lease terms would be transferred

from its traditional venue, the State courts, to the courts of the United States.


With the absence of an affirmative grant of federal court access in Section

4137, the District Court lacks jurisdiction over the Complaint.  *Touche Ross & Co.*

*v. Redington*, 442 U.S. 560 (1979).

> The central inquiry remains whether Congress intended to create, either
> expressly or by implication, a private cause of action. …Here, the statute by
> its terms grants no private rights to any identifiable class and proscribes no
> conduct as unlawful.  And the parties as well as the Court of Appeals agree
> that the legislative history of the 1934 [Securities Exchange] Act simply
> does not speak to the issue of private remedies under § 17(a).  At least in
> such a case as this, the inquiry ends there: The question whether Congress,
> either expressly or by implication, intended to create a private right of
> action, has been definitely answered in the negative.

442 U.S. at 575-76 (cite omitted).

In *Touche Ross*, Section 17 of the Securities Exchange Act required

brokerage firms to file reports with the Securities and Exchange Commission.  The

question was whether the statute created a private cause of action in favor of the brokers' customers against auditors who audit such reports, based on false statements contained in those reports.   442 U.S. at 562.  Despite the existence of a specific affirmative duty, the Supreme Court found no cause of action.

The absence of Congressional intent to create a cause of action substantially ends the inquiry.  Chemerinsky, *Federal Jurisdiction 3rd ed.* (Aspen, Gaithersburg Md, 1999).  In many decisions since *Touche Ross*, the Supreme Court has reaffirmed that "private rights of action will be created only if there is affirmative evidence that Congress intended to create a private cause of action." *Id.*, §6.3.3, page 382.  He concludes, "In general, the Supreme Court has been reluctant to create new causes of action, even in areas where it has been willing to develop common law rules."  Id. at §6.3.3 at page 376.[1]

Professor Chemerinksy cites *Karahalias v. National Federation of Federal Employees,* 489 U.S. 527 (1989).  *Id.* at §6.3.3.  *Karahalias* is instructive here. The employee complained that his union violated its duty of fair representation.  A federal statute provided that the union had a duty of fair representation to its members.  489 U.S. at 531.  However, Congress gave enforcement powers over such claims to a federal agency, not to individual union members.  489 U.S. at

---

[1]  The major exception is not pertinent here.  The Supreme Court has implied private rights of action against federal officials for violations of the Constitution.  Chemerinsky at §6.3.3, p. 377.

529.  Despite the plain language in a federal statute creating a specific duty between the union and its members, the statute created no individual cause of action.

Under *Touche Ross,* the analysis "begins with the language of the statute itself."  442 U.S. at 568.  In *Touche Ross,* there was a statute which imposed an express affirmative duty on a class of people.  There is no such thing here.  In *Touche Ross,* the Supreme Court found that the statute "neither confers rights on private parties nor proscribes any conduct as unlawful."  442 U.S. at 569.

There are indeed prohibitions contained in Section 4137.  This Section prohibits housing owners from using leases with certain terms, and requires certain affirmative duties by housing owners toward tenants.  But Section 4137 creates a cause of action in favor of no one.  The prohibitions and mandates are directed at the owners and managers of housing.  If Section 4137 were intended to give anyone a cause of action, it would be in favor of the tenants.  The tenants are the major beneficiaries of the prohibitions in Section 4137; yet, the statute is silent about granting tenants access to federal court.  The reason is that no such access was intended.

In *Touche Ross*, as here, Congress placed enforcement powers in a different section.  *Touche Ross* states:

> Further justification for our decision not to imply the private remedy that
> SIPC and the Trustee seek to establish may be found in the statutory
> scheme of which § 17(a) is a part.  First, § 17(a) is flanked by provisions of
> the 1934 Act that explicitly grant private causes of action.

442 U.S. at 571-72.  In short, the expression of Congressional intent may be found

by comparing where Congress did and did not grant causes of action.  In the

instant case, there is another section of NAHASDA which spells out in detail who

may have access to the courts of the United States, and under what circumstances.

25 U.S.C. §4161.   When Congress wanted to grant access to the federal courts

under NAHASDA, it did so expressly.

The Ninth Circuit applied *Touche Ross* in *Chilkat Indian Village v.

Johnson*, 870 F.2d 1469 (9th Cir. 1989).

> The intent of Congress remains the ultimate issue, and unless this
> congressional intent can be inferred from the language of the statute, the
> statutory structure, or some other source, the essential predicate for
> implication of a private remedy simply does not exist.

870 F.2d at 1472 (cites and internal quotes omitted).

With *Touche Ross* and its line of cases, the legal inquiry substantially ends.

No part of Section 4137 grants to an aggrieved person a private cause of action.

C.  A basis for federal jurisdiction cannot be implied into 25 U.S.C. §4137.

In *Cort v Ash*, 422 U.S. 66 (1975), the U.S. Supreme Court created a four-part test for inferring the existence of a statutory cause of action when Congress is silent.  *Touche Ross* largely superseded the need for any analysis using the *Cort* factors.  *Touche Ross* held,

> …the Court did not decide that each of these [*Cort*] factors is entitled to equal weight. The central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action.

442 U.S. at 575. The Ninth Circuit has continued to apply *Cort* when analyzing the question of a private remedy.  *Solomon v. Interior Regional Housing Authority*, 313 F.3d 1194 (9th Cir. 2002).

1. Was the statute was enacted for the benefit of a special class of which the plaintiff is a member?
2. Is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one?  This factor requires an examination of legislative history.
3. Would implying a private remedy frustrate the underlying purpose of the legislative scheme?
4. Is implying a federal remedy is inappropriate because the subject matter involves an area basically of concern to the States?  In a case involving an Indian tribe, this factor is applied by determining whether federal remedies would interfere with matters traditionally relegated to the control of semisovereign Indian tribes.

*Solomon*, 313 F.2d at 1196 (paraphrase).

It is not necessary for all four of the *Cort* factors to favor the presence or absence of a federal judicial remedy. In *Solomon,* the Ninth Circuit held against a federal remedy on the strength of three of the four factors. 313 F.3d at 1200. In the Ninth Circuit, when the first two *Cort* factors disagree regarding the implication of a statutory cause of action, then the last two factors must be analyzed. *Oliver v. Sealaska Corp.,* 192 F.3d 1220, 1224 (9th Cir.1999) (citing *Touche Ross*); *see Solomon*, 313 F.3d at 1203 (Fletcher, dissenting)[2]. In the instant case, all four factors point to the absence of a federal judicial remedy.

The discussion below centers on whether Section 4137 provides any sort of relief against Indian tribes. The same arguments apply to implied statutory actions against Indian tribal officials.

### 1. *The statute was not enacted for the benefit of a special class of which the plaintiff is a member.*

Individual Indians and the Indian tribes are intended beneficiaries of NAHASDA. The Plaintiff is not a member of this class. Plaintiff IRHA is not a natural person who is an Indian, and IRHA is not a tribe. NAHASDA allowed the tribes to create the housing authorities in their modern form. But the Housing

---

[2] Dot Lake disagrees with the Ninth Circuit holding in Oliver. The result in Oliver suggests that the Cort factors have roughly equal weight. Touche Ross held that the four Cort factors do not have equal weight, and that the plain language of the statute largely controls the analysis.

Authorities were created only a means to an end.  NAHASDA was not enacted to protect the interests of regional housing authorities.

The IRHA was created under Alaska state law.  Complaint ¶¶1, 2.  Even under state law, the housing authority was created as a means to an end, to cure "the acute shortage of housing and related facilities … in the villages of the state." Alaska Statutes 18.55.995.  The substantive power to create a housing authority was given to "certain Native associations".  AS 18.55.995.  State law provides that Tanana Chiefs Conference holds the authority to create a regional housing authority for Interior Alaska.  AS 18.55.996(a), (b).  IRHA itself did not exist until the governing body of Tanana Chiefs Conference authorized its existence.  AS 18.55.996(c).  The IRHA is an "Indian Housing Authority" under federal law because it is authorized to build low-income housing and it is established "by operation of State law providing specifically for housing authorities for Indians, including regional housing authorities in the State of Alaska."  25 U.S.C. §4103(21)(B)(ii); *see* 24 CFR 100.10 (same); Complaint ¶2.

The Congressional findings are codified at 25 U.S.C. §4101.  NAHASDA was enacted to promote the construction and occupancy of adequate housing for Native American families.  The intended beneficiaries are natural persons, who will have better housing, and the Indian tribes, who will obtain greater self-determination, or control over their affairs.  The findings declare the substantive

duty of Congress and the Federal government to preserve and promote the Indian tribes and the general welfare of tribal members.  The housing authorities are mentioned once, but never as an institution to which the Federal Government owes some duty, and only as the mechanism by which Congress fulfills its substantive duties to the Indian tribes and their members.

Congress found that the Federal Government has a responsibility to promote the general welfare "by using Federal resources to aid families and individuals".  25 U.S.C. §4101(1)(A).  This general welfare is further promoted "by developing effective partnerships" among governments, including tribal governments.  25 U.S.C. 4101(1)(C).  Congress sought to develop "a healthy marketplace and allow families to prosper without government involvement in their day-to-day activities."  25 U.S.C. §4101(1)(C).

Congress recognized the unique relationship between the Federal Government and the Indian tribes, "and a unique Federal responsibility to Indian people."  25 U.S.C. §4101(2).  The United States has "historical relations with the Indian tribes," and has "undertaken a unique trust responsibility to protect and support Indian tribes and Indian people".  25 U.S.C. §4101(3).

Through a series of treaties and statutes, and a "general course of dealing," Congress has assumed a responsibility for "protection and preservation of Indian tribes and for working with tribes and their members" to improve housing and

their general welfare.  25 U.S.C. §4101(4).  Providing affordable homes "is an

essential element in the special role of the United States in helping tribes and their

members" to improve their housing and general welfare.  25 U.S.C. §4101(5).

Congress wanted to promote the use of private financing mechanisms "to achieve

the goals of economic self-sufficiency and self-determination of their members."

25 U.S.C. §4101(6).

In the final finding, Congress recognized "the right of Indian self-

determination and tribal self-governance."  To advance these goals, Congress

provided that assistance should go "directly to Indian tribes or tribally designated

entities".  This one reference is the findings' only mention of the housing

authorities; they will become the vehicle for promoting the substantive rights that

belong to tribes and their individual members.

NAHASDA defines the term "tribally designated housing entity."  25

U.S.C. §4103(21) ("TDHE").  The definition underscores the absence of any

substantive rights held by the entity itself.  The housing entities can be created

only by the actions of a tribe.  25 U.S.C. §4103(21)(C).  "A tribally designated

housing entity may be authorized or established by one or more Indian tribes to act

on behalf of each such tribe authorizing or establishing the housing entity."  *Id*.  In

Alaska, the housing entities may be created by operation of State law.  25 U.S.C.

§4102(21)(B).  As noted, Alaska gave this power to certain Native associations.

AS 18.55.995.

A housing entity has no independent existence.  A group of individuals

cannot organize a housing entity and then begin communications with the federal

government.  The tribes hold all the substantive rights; they are the institutions that

hold the power to create the housing entity.  The housing authority is only the

mechanism that fulfills the purposes of the tribes.

Throughout NAHASDA, Congress granted various statutory rights to both

Indian tribes and housing entities.  However, they have no existence independent

of statute, and no existence independent of the tribes.[3]  IRHA could not "transact

business or exercise powers" before its creation by a Native association, Tanana

Chiefs Conference.  AS 18.55.996(c).  Counsel for Dot Lake found no statutory

provision that would allow the tribally designated housing entity to cut the tribe

loose and then exist independently.  For purposes of analysis under *Cort v. Ash,*

this subordinate relationship answers the question of whose benefit Congress

sought to promote.

Congress enacted a set of national goals for NAHASDA.  25 U.S.C.

§4131(a).  These goals describe what the housing authorities are supposed to

accomplish for Indian families.  The goals are not a description of benefits that

---

[3] The tribes themselves pre-exist the creation of the United States.

Congress is granting to the housing authority itself.  Without going into a section-by-section analysis of NAHASDA, the Act's many provisions describe the methods that may be used to accomplish the goals of improved housing and increased self-determination.  These provisions show how Congress was conferring benefits upon Indian tribes and individual members—by authorizing the tribes to create a new entity, the housing authority.

Federal regulations assume that the federal agency will working with the Indian tribe, not a housing authority.  24 CFR 1001.1 (grants and technical assistance go "to Indian tribes and Alaska Native villages for the development and operation of low-income housing in Indian areas.').  The federal regulations restate the Congressional findings, 24 CFR 1000.2, and the Congressional objectives.  24 CFR 1000.4.

The regulations reflect the Congressional decision that the housing entities are created by the tribes.  The recipient eligible for aid can be a tribe or a tribally designated housing entity "when authorized by one or more tribes."  24 CFR 100.202.  By resolution, the tribe can designate itself as the local housing entity or delegate this status.  24 CFR 1000.204.  The housing entity is designated by "resolution of the Indian tribe or Indian tribes to be served."  24 CFR 1000.206. This last regulation underscores the subordinate relationship of the housing

authority.  Congress passed NAHASDA to benefit tribes, not to benefit housing authorities, and this is the important point under *Cort v. Ash*.

The Interior Regional Housing Authority is not a member of the class for which the Native American Housing and Self-Determination Act was passed.  The Act was passed for the benefit of Indian tribes and natural persons who are members of those tribes.  IRHA is neither.

*2.  There is an indication of legislative intent, both explicit and implicit, to deny a statutory remedy.*

Dot Lake reviewed the legislative intent earlier, when showing the absence of any federal remedy for alleged violations of Section 4137.  This analysis requires Dot Lake to prove a negative, but Section 4137 is not very long and the process of elimination is straightforward.  Congress gave aggrieved persons no remedy under this section.

Under Section 4137, the persons who are truly holding substantive rights are the tenants.  For example, §4137(a)(2) requires the owner or manager to comply with applicable housing codes and quality standards.  But the section does not give the tenant a federal remedy when the owner violates the housing code.

Similarly, the tenant has no federal remedy when the owner evicts the tenant without notice.  Section 4137(a)(3).  Nor is there a federal remedy when the

notice of eviction does not disclose the tenant's opportunity to inspect records. Section 4137(a)(4).  Of course, Congress did not abrogate the tenant's state and local remedies, nor those of the housing authority.  It is just that federal court is not made available.

Section 4137(b) requires the owner or manager to use tenant selection policies reasonably related to the goals of NAHASDA.  But an applicant who is denied housing under these policies is granted no federal remedy.

As noted above, Congress granted access to the federal courts under NAHASDA in one particular section, 25 U.S.C. §4161.  That statute shows that Congress was interested in how a case could be brought to court, and the procedures that would be used once the case began.  25 U.S.C. §4161(c), (d).  The aggrieved tribe or housing authority has access to the U.S. Court of Appeals after exhausting administrative remedies.  25 U.S.C, §4161(d).  The only person authorized to file in United States District Court is the Attorney General of the United States.  25 U.S.C. §4161(c).  In fact, 25 U.S.C. §4161(c) is the only place in the entire Act where any person of any description is authorized to file in federal District Court.

Here, the Housing Authority asserts that Dot Lake violated Section 4137 when the tribe passed an ordinance which allegedly "reduces, undercuts, or negates" the IRHA's ability to terminate a lease under certain circumstances.

Complaint ¶¶11, 19.  First of all, these words are nowhere in Section 4137. Congress did not use these terms.  Secondly, this Section contains no general prohibition against exercise of tribal powers that would give IRHA some cause of action here.  Third, the statute grants no one a remedy in federal court--- neither the tribe, the tenant, the housing authority, nor the manager or operator of the housing.  The content of the Dot Lake housing ordinance is not the issue here. The only question is whether Congress granted the housing authorities a remedy in federal district Court, and the Congressional silence answers no.

What remedy is there?  The first answer is that Congress might have granted no remedy in federal court.  *Solomon* recognizes this.  313 F.3d at 1196. There is no rule that the existence of a federal right or duty implies jurisdiction in federal court.  Second, Congress did not abrogate the ability of the housing entities to pursue their remedy in state court.  IRHA has done just that.  IRHA has been successful in using federal law as a defense in the courts of Alaska.  *Interior Regional Housing Authority v. James*, 989 P.2d 145, 147-50 (Alaska 1999).

Applying the Ninth Circuit rule in *Oliver*, *supra,* 192 F.3d at 124, the first two factors under *Cort v. Ash* disfavor the existence of a federal judicial remedy. Accordingly, the inquiry ends.  There is no cause of action under Section 4137.

However, to show the complete absence of support for a private cause of action,

the tribal defendants will continue the *Cort* analysis.


*3. Implying a private remedy would frustrate the underlying purpose of the legislative scheme.*

The third *Cort* factor is the potential frustration of Congressional purpose.

In *Solomon*, the Ninth Circuit answered the question as follows:  "But subjecting

an Indian organization to an individual action for damages for every decision to

hire a non-Indian for a particular position would undermine the Indian

organization's autonomy, not enhance it."  313 F.3d at 1199.  So it is here.

In *Solomon,* the Ninth Circuit was writing of the burden that individual

suits would place upon the Housing Authority.  However, the same can be said of

Housing Authority suits against individual tribes.  Subjecting an Indian tribe to

litigation and injunctive relief every time a housing authority was dissatisfied with

a tribal ordinance would undermine tribal self-determination, one of the primary

goals of NAHASDA.

Under Section 4137, Congress specified three areas in which tribes may

legislate: adequate notice of eviction, disclosure of records prior to eviction, and

definition of good cause for eviction.  Section 4137(a)(3), (4), (5).  Whether the

Dot Lake ordinance is wise is not the issue under the *Cort v. Ash* analysis.  The

question is the effect that a federal judicial remedy would have on the effectiveness of the statute in fulfilling the purposes of Congress.

Implying a cause of action in the face of Congressional silence would throw the statutory scheme into uncertainty. The Housing Authority bases its complaint on a violation of a nonexistent provision that must be completely read into the statute. The provision that IRHA needs does not exist. A ruling in favor the Housing Authority position will require tribes across the United States to try to figure out what limits there might be on their authority, despite Congressional silence. NAHASDA was intended to promote self-determination, not make it less certain.

*4. Implying a federal remedy is inappropriate because federal remedies would interfere with matters traditionally relegated to the control of the States and the semisovereign Indian Tribes.*

The case before the federal District Court is a state eviction case. The subject matter is governed entirely by State law. Landlord-tenant law is the traditional subject of state and local regulation.

The state-law analysis begins with the Plaintiff. The Housing Authority itself is a creature of state law. Complaint ¶¶1, 2; AS 18.55.995, 18.55.996; 25 U.S.C. §4103(21)(B). The Housing Authority has no exemption from the landlord-tenant laws of the State of Alaska.

The State of Alaska enacted the Uniform Residential Landlord and Tenant Act ("URLTA").  AS 34.03.010 – 34.03.380.  The state act is intended to "simplify, clarify, and modernize" landlord-tenant law, and to "improve the quality of housing."  AS 34.03.010(b)(1),(2).  The URLTA is a comprehensive statute governing all aspects of the landlord-tenant relationship.  Alaska also has a set of laws governing forcible entry and detainer ("FED") actions, which grant landlords a method for recovering residential property.  AS 09.45.060- 09.45.160.

"This chapter [URLTA] applies to and determines rights, obligations, and remedies under a rental agreement, wherever made, for a dwelling unit in this state."  AS 34.03.300(a).  Among the exceptions, there is no exception for a regional housing authority.  AS 34.03.330(b).  The URLTA was enacted in 1974. Chapter 10, SLA 1974.  The statute that authorized the creation of the Interior Regional Housing Authority was enacted in 1971.  Chapter 123, SLA 1971.  The landlord-tenant laws and the housing authority laws have existed together for over 30 years, and the Alaska State Legislature has never carved out an exception for this type of subsidized housing.

The Alaska Supreme Court interprets URLTA with the purpose of harmonizing its provisions with the Alaska forcible entry and detainer laws. *McCall v. Fickes*, 556 P.2d 535(Alaska 1976).  This harmonization is important because plaintiff Housing Authority first brought this case in Alaska state court,

and began litigating the same issues it now brings to federal court.  Complaint ¶¶16, 18, *passim*.  The Alaska state courts have recognized the importance of promoting consistency and certainty in the administration of the Alaska Statutes relating to landlords and tenants.  The Alaska courts are the best forum for assuring that the various state laws affecting the landlord-tenant relationship are consistent with each other.

The Alaska Supreme Court recognizes the importance of federal housing law, and has held in favor of the Interior Regional Housing Authority.  *Interior Regional Housing Authority v. James*, 989 P.2d 145, 147-50 (Alaska 1999).  Under an earlier Indian housing statute, the Alaska Supreme Court held that IRHA did not have certain maintenance duties for a residence.  The result was no liability for IRHA.  *James* shows that the courts of the State of Alaska are fully capable of recognizing federal Indian housing law and applying it in favor of the Plaintiff.  The courts of the State of Alaska are the best forum to assure harmony among the applicable laws: the state Uniform Residential Landlord and Tenant Act, the state forcible entry and detainer laws, Alaska Statutes 18.55.995- 18.55.998, and the Native American Housing and Self-Determination Act.

The rights and remedies as between tenants and landlords is traditionally a matter of state law, and Alaska has enacted a comprehensive set of statutes which govern the rights of landlords and tenants, and their mutual rights and duties in the

case of a dispute.  Alaska recognizes federal Indian housing law, and has applied it in favor of the plaintiff here.

The implication of a federal cause of action would unreasonably and needlessly interfere with the State's responsibility for landlord-tenant relations.

Conclusion

Congress created no express cause of action under 25 U.S.C. §4137. *Touche Ross, supra.*   All four factors of *Cort v. Ash* disfavor the conclusion that Congress intended to create a statutory cause of action.  Section 4137 is the only one upon which plaintiff IRHA cites as the source of its federal rights.  In the absence of any such source of federal rights, the Complaint lacks a federal question.  The Complaint presents no civil action under the Constitution or laws of the United States.  28 U.S.C. §1331.

By reason of all of the above, the Native Village of Dot Lake, William Miller and Charles Miller ask the District Court to dismiss this action.

Mark Andrews                                        Dated: September 23, 2006.


Acting General Counsel
Tanana Chiefs Conference
122 First Avenue  Suite 600
Fairbanks, Alaska  99701
(907) 452-8251