Peter J. Aschenbrenner
Aschenbrenner Law Offices, Inc.
Physical address:  823 Third Avenue, Fairbanks, Alaska  99701
Mailing address: P.O. Box 73998, Fairbanks, Alaska  99707
Telephone (907) 456-3910 • Fax: (907) 456-8064
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

INTERIOR REGIONAL HOUSING
AUTHORITY, a Public Corporation and
Tribally Designated Housing Entity,

          Plaintiff,

vs.

BARBARA ALMQUIST, individually, THE
VILLAGE OF DOT LAKE aka THE
NATIVE VILLAGE OF DOT LAKE,
WILLIAM J. MILLER, CHARLES P.
MILLER and JOHN DOES NO. 1 - 3, all in
their official capacities,

          Defendants.

Case No. 4:06-CV-00018 RRB

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFF IRHA'S MOTION FOR 60(b) RELIEF**

Plaintiff Interior Regional Housing Authority, by and through its undersigned counsel,

Aschenbrenner Law Offices, Inc., has filed for Fed.R.Civ.P. Rule 60(b) relief from the Order

Granting Almquist's Motion to Dismiss Count I[1] entered by this court and distributed to the

parties via ECF on November 2, 2006.

---

[1] The Order Granting Almquist's Motion to Dismiss Count I is at Docket No. 52.

Memorandum in Support of IRHA's Motion for 60(b) Relief
*IRHA v. Almquist, et al.*
Case No. 4:06-CV-00018 RRB
Page 1

Fed.R.Civ.P. Rule 60(b), titled "Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc." provides as follows:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovery evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominate intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant no actually personally notified as provided in Title 28, U.S.C., § 1655, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, audita querela, and bills of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by and independent action.

IRHA seeks relief under Rule 60(b)(1)and (6) due to mistakes of the court in handling the outstanding motions on file, which were scheduled for briefing after depositions taken at the court's order, generally; and specifically, the court's overlooking its duties regarding dismissals, on motion or *sua sponte*, on Fed.R.Civ.P. Rule 12(b)(6) grounds.

## I.    Summary of Motions Filed

A short summary of the dismissal motions filed in this matter is necessary.

### A.    *Almquist's First Motion to Dismiss*

- On 6/29/2006 IRHA filed a Motion for Preliminary Injunction, at Docket No. 4.

Memorandum in Support of IRHA's Motion for 60(b) Relief
*IRHA v. Almquist, et al.*
Case No. 4:06-CV-00018 RRB
Page 2

- On 7/6/2006 Almquist filed an Opposition to Preliminary Injunction and Cross-Motion to Dismiss, at Docket No. 15.

- On 7/21/2006 IRHA filed a Motion for Rule 56(f) Continuance at Docket No. 23. This continuance motion asked for permission for IRHA to take the depositions of the Miller defendants to obtain further facts and information relating to Ordinance No. 06-01-01 prior to filing its opposition to Almquist's Cross-Motion to Dismiss.

- On 8/28/2006 the court granted IRHA's 56(f) Motion, giving IRHA permission to take the depositions of William J. Miller and Charles P. Miller, and granting a continuance for IRHA to file its Opposition to Almquist's Cross-Motion to Dismiss within 60 days of taking those depositions at Docket No. 41. In essence, by granting this request, the court agreed with IRHA that disposition of the motion as a summary judgment motion was appropriate, that a record should be developed, and that IRHA's claim for relief could be tested, as IRHA's counsel requested at the preliminary injunction hearing, on its own motion for summary judgment against all Defendants.

B.    *Almquist's Second Motion to Dismiss*

- On 8/7/2006, Almquist filed a second motion to dismiss, titled Motion to Dismiss Count I, at Docket No. 29.

- On 8/22/2006, IRHA filed its Opposition to Almquist's Motion to Dismiss Count I, at Docket No. 33.

- On 8/28/2006, Almquist filed a Reply in Support of the Motion to Dismiss Count I, at Docket No. 40.

Memorandum in Support of IRHA's Motion for 60(b) Relief
*IRHA v. Almquist, et al.*
Case No. 4:06-CV-00018 RRB
Page 3

C.    *Dot Lake and the Millers' First Motion to Dismiss*

- On 8/23/2006, Dot Lake and the Millers filed a Motion to Dismiss for Lack of Jurisdiction, at Docket No. 37.

- On 9/8/2006, IRHA filed its Opposition to Dot Lake and the Millers' Motion to Dismiss for Lack of Jurisdiction, at Docket No. 42.

- On 9/15/2006, Dot Lake and the Millers filed their Reply in Support of Motion to Dismiss for Lack of Jurisdiction, at Docket No. 43.

- On 9/19/2006, the court denied Dot Lake and the Millers' Motion to Dismiss for Lack of Jurisdiction, at Docket No. 44.

D.    *Dot Lake and the Millers' Second Motion to Dismiss*

- On 9/23/2006, Dot Lake and the Millers filed a Motion to Dismiss for Lack of a Federal Question, at Docket No. 44.

- On 10/12/2006, the court granted IRHA's Unopposed Motion Regarding Deadlines and ordered that IRHA's opposition to Dot Lake and the Millers' 9/23/2006 Motion to Dismiss be filed by 11/6/2006 (at the same time that IRHA was to file its opposition to Almquist's Cross-Motion to Dismiss).

E.    *Dot Lake and the Millers' Third Motion to Dismiss*

- On 10/18/2006, Dot Lake and the Millers filed a Motion to Dismiss Based on 28 U.S.C. 2283, at Docket No. 50.

- IRHA has not yet filed its Opposition to this motion as the deadline to file the opposition is 11/6/2006.

Memorandum in Support of IRHA's Motion for 60(b) Relief
*IRHA v. Almquist, et al.*
Case No. 4:06-CV-00018 RRB
Page 4

The court's Order Granting Almquist's Motion to Dismiss Count I, which is the subject of IRHA's Rule 60(b) motion, denied all remaining motions as moot, and closed the case.[2]

## II.    POSTURE OF CASE.

This is a case that turns on the lack of authority of Defendants William Miller and Charles Miller to put their signatures to a document titled "Tribal Ordinance" -- wholly prepared in a half day by Mr. Walleri and signed by the Millers in "five to ten minutes" as Defendant Charles Miller eventually admitted.[3]

If the Millers were not acting within the scope of their authority for the Village of Dot Lake then the Tribe could not defend a challenge to that ordinance on sovereign immunity grounds, and, given the previous "consensual commercial relationship" between IRHA and the Village of Dot Lake, federal question jurisdiction could be invoked on that ground. IRHA's claim is both cognizable and one over which District Courts can and should take jurisdiction. The authorities on this point are overwhelming and it is worthwhile to review the merits of these cases.

By the time the court granted to IRHA the Rule 56(f) relief requested, on August 28, 2006, the court had been cited to authorities such as *Montana v. U. S.*, 450 U.S. 544, 101 S.Ct. 1245 (1981)[4], *National Farmers Union Ins. Cos. v. Crow Tribe,* 471 U.S. 845, 851 (1985)[5] and *Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 102 S.Ct. 894 (1982); and for circuit authorities such cases as *Hardin v. White Mountain Apache Tribe*, 779 F.2d 476 (9th

---

[2] "Any and /or all remaining motions are DENIED as moot, and this matter is now closed. 11/2/2006 Order at p. 6.
[3] Q. Do you remember about how long that took? A. Probably five, ten minutes. Dep. C. Miller, 8:10-11.
[4] In IRHA's Memorandum in Support of Motion for Preliminary Injunction and Motion for TRO on June 29, 2006 at Docket No. 6.
[5] *Id.*

Memorandum in Support of IRHA's Motion for 60(b) Relief
*IRHA v. Almquist, et al.*
Case No. 4:06-CV-00018 RRB
Page 5

Cir. 1985) and *Burrell v. Armijo*, 456 F.3d 1159 (10th Cir. 2006).[6] The United States Supreme Court does not employ a *Cort v. Ash*, 422 U.S. 66 (1975) analysis when commercial or property interests of tribal non-member are impacted by tribal action, whether regulatory or adjudicatory; instead, the analysis moves one step forward, and revolves around the availability of tribal court as an avenue of redress and whether the tribal officials were acting within the scope of their authority.

It seemed for an interval of over two months that the District Court was following the relevant authorities in managing the case insofar as the underlying jurisdiction questions were being raised by Ms. Almquist. The dispute over IRHA's eviction from the triplex was one which would revolve around purported tribal official action and therefore deposition testimony would be critical to that decision. Then the decision of November 2, 2006 was entered. The oppositions and IRHA's summary judgment motion are being filed timely on November 6, but in the context of an accompanying request for Rule 60(b) relief.

Take something as seemingly straightforward as the court ordering that all pending motions are denied as moot. However, this court had previously ordered a continuance for IRHA to oppose Almquist's Cross-Motion to Dismiss and ordered the depositions of Charles Miller and William Miller be taken, on August 28, 2006. These depositions were taken in the context of developing the record as to whether they were authorized to sign a faxed "Tribal Ordinance." These depositions were taken on September 6, 2006 and have been transcribed. In the meantime, Defendants Native Village of Dot Lake and the Millers have moved to dismiss for lack of federal question on September 23, 2006.

---

[6] In IRHA's Opposition to Defendant Almquist's Motion to Dismiss Count I on August 22, 2006 at Docket No. 33.

Memorandum in Support of IRHA's Motion for 60(b) Relief
*IRHA v. Almquist, et al.*
Case No. 4:06-CV-00018 RRB
Page 6

No order has been entered vacating the August 28, 2006 Order for Rule 56(f) relief which IRHA sought as early (in open court) as the preliminary injunction hearing of July 6, 2006; or suppressing the depositions of the Miller depositions or vacating the time for IRHA's oppositions to the Dot Lake and Miller defendants' motions to dismiss due to be filed November 6, 2006.

IRHA submits with this Motion for Rule 60(b) relief (a) its own Motion for Partial Summary Judgment on Count I, (b) its Opposition to Defendant Almquist's Cross-Motion to Dismiss filed on July 6, 2006 at Docket No. 15, (c) its Opposition to Defendants' Dot Lake, William J. Miller and Charles P. Miller's Motion to Dismiss for Lack of a Federal Question dated September 23, 2006 at Docket No. 45, and (d) its Opposition to Defendants' Dot Lake, William J. Miller and Charles P. Miller's Motion to Dismiss Based on 28 U.S.C. 2283 dated October 18, 2006 at Docket No. 50.

## II.    Argument:  The court cannot dismiss the Dot Lake and Miller defendants *sua sponte*.

This court has (apparently) ordered the dismissal of IRHA's claims (without any reference or explanation) in its order dated November 2, 2006 *against the Dot Lake and the Miller Defendants*.  Dot Lake and the Millers have filed three motions to dismiss; one of them was denied and the other two will be ripe for decision with IRHA's oppositions due to be filed on November 6, 2006.  There is nothing in this court's November 2 order that indicates that those motions were the basis on which the court acted; after all, the court had given IRHA until November 6 to respond to the challenge to federal question jurisdiction which is, in essence, exactly the motion that it granted in Ms. Almquist's favor.  The only basis that the

Memorandum in Support of IRHA's Motion for 60(b) Relief
*IRHA v. Almquist, et al.*
Case No. 4:06-CV-00018 RRB
Page 7

court can be said to have acted upon is under *Wong v. Bell,* 642 F.2d 359, 361-362 (9th Cir. 1981) that is, on a *sua sponte* motion to dismiss.

The standard for a *Wong v. Bell* dismissal is set forth in that decision, and has also been further elaborated in *Sparling v. Hoffman*, 864 F2.d 635 (9th Cir 1988). In general, "A trial court may act on its own initiative to note inadequacy of a complaint and dismiss it for failure to state a claim, but court must give written notice of its sua sponte intention to invoke Rule 12(b)(6) and afford plaintiffs 'an opportunity to at least submit a written memorandum in opposition to such motion'." *Wong* 359. The court cited to *Vignolo v. Miller*, 120 F. 3d 1075, 1077 (9th Cir. 1997) a prisoner's rights case, but that case in turn relied on *Parks School of Business, Inc. v. Symington*, 51 F. 3d 1480 (9th Cir. 1995) which pointed out that the plaintiff had seven months to object to a dismissal without prejudice (at 1488), except the element of due process that *Wong* secures and this court has withheld.

The court must give notice of its intention to dismiss and give the plaintiff some opportunity to respond and cure any pleading deficiency. Obviously, there is some incoherence between what the court thinks IRHA is pleading and what, in fact, IRHA's case is. If the Defendants have a defense under 25 USC Sec. 4137(a)(5), they need to make that defense and advocate tribal regulatory action as a valid exercise of tribal power by a tribe with "governing documents" that pass muster under Sec. 476(h). It is hardly the job of a plaintiff to anticipate and dispute all defenses in a complaint; in any event, IRHA has gone far enough by putting at issue the viability of tribal government under the 1986 constitution and any tribal "purported" official action taken through June 1, 2006.

Memorandum in Support of IRHA's Motion for 60(b) Relief
*IRHA v. Almquist, et al.*
Case No. 4:06-CV-00018 RRB
Page 8

In entering its order this court has run afoul of the rule that all well pleaded material allegations of the complaint are conceded to be true, for purposes of a motion to dismiss. All material allegations in the complaint must be accepted as true, and all inferences must be construed in favor of the non-moving party. *Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1439 (9th Cir.1987); *Wickland Oil Terminals v. Asarco, Inc.,* 792 F.2d 887, 889-90 (9th Cir.1986).

Take ¶13 of IRHA's complaint: "This case and controversy arises from the purported adoption of Ordinance No. 06-01-01 (Doc. Att. 1) by the Dot Lake Village Council, which reduces, undercuts, or negates the federal rights granted to IRHA as a NAHASDA Indian Housing Authority and/or Tribally Designated Housing Entity. Specifically Plaintiff IRHA is entitled to evict Defendant Almquist for good cause under NAHASDA Sec. 207(a)(5), 25 USC Sec. 4137(a)(5)."

"Did fact the Dot Lake Village Council actually adopt such an ordinance?" IRHA attacks the factual basis of such official act. The negative is conceded by the moving party: that there was no such ordinance adopted. The only way for the court to have reached the conclusion that it did, is to assume a fact not-in-evidence – that indeed under Rule 56(f) it ordered be subject to discovery – which is that the ordinance was legally adopted.

In the instant case it is rather obvious that IRHA can obtain relief, as IRHA now has its own partial summary judgment motion on file, which sets forth the grounds for relief, and addresses federal questions regarding sovereign immunity / tribal scope of authority raised by the Miller defendants' conduct in signing the "Tribal Ordinance." Indeed, IRHA has supplied the factual premise for IRHA's right to obtain relief against the tribe and the Miller defendants

Memorandum in Support of IRHA's Motion for 60(b) Relief
*IRHA v. Almquist, et al.*
Case No. 4:06-CV-00018 RRB
Page 9

through the Rule 56(f) depositions which the court ordered to be taken, on short notice, and then which were taken and which record is now being submitted to this court on the date that the court ordered, that is November 6, 2006.

This court must grant IRHA leave to amend as to Defendant Almquist's motion. Even if the court is strongly inclined to doubt that IRHA can plead facts to make a cognizable federal claim for relief against Defendant Almquist or any Defendants, the court must recall that *it ordered a record prepared* on this point by directing that depositions of the Miller defendants be prepared. After all, the issue was understood by IRHA and the court to be – until November 2, 2006 – whether in fact any official tribal action ever occurred at all. Period.

When the court speculates, without any notice to IRHA or input from IRHA, about whether IRHA has facts to plead on an amended pleading, the court has to recall that it has already given IRHA permission to place these facts in the court record. This permission goes far beyond mere leave to amend. IRHA has already obtained permission from the court (through its order of August 28, 2006) to record sworn testimony, obtain documents, transcribe the testimony and file excerpts and exhibits therefrom for the purpose of making IRHA's affirmative motion for summary judgment, as IRHA's counsel advised the court on July 6, 2006.

Unlike the typical *Wong v. Bell* situation, IRHA is not a party scrapping around to come up with one more day in court on yet another amended pleading, seeking merely to put off the inevitable involuntary dismissal because there is no universe of known facts that will make a claim litigable when it is arbitrable, for example. Hence, Judge Kleinfeld's colloquy in *Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635 (9th Cir. 1988), where he was giving one

Memorandum in Support of IRHA's Motion for 60(b) Relief
*IRHA v. Almquist, et al.*
Case No. 4:06-CV-00018 RRB
Page 10

last chance to amend.  "At the June second hearing the judge told the Sparlings' counsel that he had "looked at the amended complaint and this [was] going to be the last time out" and that they must file a new complaint within twenty days.  Thus, he told them that the proposed amended complaint was deficient and allowed them to file a new one.  Nonetheless, seven months later when they finally filed an amended complaint, they simply refiled this complaint!" (at 639-640; emphasis in original).

IRHA is a party who has labored under the burdens, as explained below, of litigation disadvantages wrongfully obtained, and just like the school district and insurer in *National Farmers*, IRHA will vindicate its rights.  At least in *National Farmers* the insurance carrier (leading the case as plaintiff) was able to reinstate its preliminary injunction against the very questionable if not entirely bogus tribal default judgment, after the Ninth Circuit decision went against it.  This court should take the opportunity to make the record plain that it is not following the court of appeals decision in *National Farmers*, but rather the unanimous decision of Justice Stevens in that case.

## V.    Argument:  The court cannot dismiss Defendant Almquist on her July 6, 2006 motion.

The dismissal as to Almquist falls under (virtually) the same standard.  Under *Fort Vancouver Plywood v. United States*, 747 F.2d 547, 552 (9th Cir. 1984), *accord*, *Pinhas v. Summit Health Ltd.,* 894 F.2d 1024 (9th Cir. 1990), the plaintiff's "complaint should not be dismissed unless it appeared beyond doubt that the plaintiff can prove no set of facts in support of his claim which entitled him to relief."

But there is more.  In *Vancouver*, the Ninth Circuit correctly pointed out that when the pleadings are accompanied by affidavits, as the affidavit of Steve Ginnis and the Documents

Memorandum in Support of IRHA's Motion for 60(b) Relief
*IRHA v. Almquist, et al.*
Case No. 4:06-CV-00018 RRB
Page 11

Attachment filed therewith, the motion to dismiss should be treated as one for summary judgment. (at 552). In any event, if the court wants an "indication of how it would amend its complaint to cure the deficiencies dismissal of most of the claims in the first place," (*Parks* at 1488) the court should certainly be on notice that IRHA challenges the right and power of a tribe without any functioning tribal government as of June 1, 2006 to adopt any housing law binding on IRHA. Other "curative amendments [should certainly] come to mind." *Id.*

IRHA correctly cited the court to pivotal authorities which are *Montana v. U. S.*, 450 U.S. 544, 101 S.Ct. 1245 (1981); *National Farmers Union Ins. Cos. v. Crow Tribe,* 471 U.S. 845, 851 (1985) at the Supreme Court level and *Hardin v. White Mountain Apache Tribe*, 779 F.2d 476 (9th Cir. 1985) and *Burrell v. Armijo*, 456 F.3d 1159 (10th Cir. 2006). It only requires *Chilkat Indian Village v. Johnson*, 870 F.2d 1469 (9th Cir. 1989) to flesh out the story, using cases cited to the court before August 28, 2006 and which the court presumably relied on in granting Rule 56(f) relief to IRHA.

But first let's fast forward. There is a reason why *Cort v. Ash*, 422 U.S. 66 (1975) doesn't fit in with this line of cases and it's this simple: There is no reason why Congress should have to create or recognize a class of business owners who deal with tribes and stamp "potential federal plaintiffs" on their respective foreheads? Each and every business owner whose property rights are affected by tribal action or inaction, well or ill-motivated, has a right to proceed to federal court, subject to the exhaustion loop, required if a tribal court exists, excused if there is no tribal court or resort would be futile, *and then* that business owner meets

Memorandum in Support of IRHA's Motion for 60(b) Relief
*IRHA v. Almquist, et al.*
Case No. 4:06-CV-00018 RRB
Page 12

the real hurdle in his suit.[7]  That is, depending on his choice of remedy, he may find that tribal sovereign immunity blocks relief.  Hence, the plaintiff who perfectly builds a federal question of his suit, on the other hand, may well have built a sovereign immunity defense for the tribe in the same effort.  And Hardin is a man who did exactly that, as we will see shortly.

In *National Farmers Union Insurance Companies v. Crow Tribe of Indians*, 471 U.S. 845, 105 S.Ct. 2447 (1985), an Indian minor was hit by a motorcycle in the parking lot of a public elementary school located on state land within the Crow Indian Reservation.  The boy sued the Crow Tribe in Tribal Court and obtained a default judgment against the school district.  The school district sued the Tribe in federal court and the Tribe asserted that the federal court had no jurisdiction over the matter.  The Supreme Court held that "in order to invoke a federal district court's jurisdiction under § 1331, it was not essential that the petitioners base their claim on a federal statute or a provision of the Constitution. It was, however, necessary to assert a claim "arising under 'federal law.'"  471 U.S. at 850.

Leroy Sage, as the story is told by Justice Stevens, sued the school district and obtained a *tribal court* default judgment.  He, himself, wound up as a defendant in the *National Farmers* litigation, that is, in the school district's suit for declaratory and injunctive relief in Federal District Court in Montana. Relief was granted the school district, which was ultimately upheld, with the Ninth Circuit being reversed along the way.

However, the majority in the Ninth Circuit decision would have given serious consideration to upholding federal court jurisdiction in this case over tribal abuse of regulatory

---

[7] This point can be elaborated further.  If Congress were called on to define tribal sovereignty over non-members' business interests, that effort would be in derogation of sovereignty itself.  Congress – letting *National Farmers* stand as good jurisdictional law – has left the interesting part of the analysis in these cases to tribal leaders' scope of authority under *Ex Parte Young*, especially when the business owner wants injunctive relief against tribal actors.

Memorandum in Support of IRHA's Motion for 60(b) Relief
*IRHA v. Almquist, et al.*
Case No. 4:06-CV-00018 RRB
Page 13

authority. "[National Farmers] invokes authority holding that a complaint challenging tribal abuse of its civil regulatory jurisdiction states a claim arising under federal common law. *See*, *e.g.*, *Babbitt Ford, Inc. v. Navajo Indian Tribe*, 710 F.2d 587, 591 (9th Cir.1983), *cert. denied*, 466 U.S. 926, 104 S.Ct. 1707, 80 L.Ed.2d 180 (1984); *Cardin v. De La Cruz*, 671 F.2d 363, 365, cert. denied, 459 U.S. 967, 103 S.Ct. 293, 74 L.Ed.2d 277 (1982). .... As noted above, a tribe's abuse of regulatory jurisdiction may create a federal cause of action. A tribe's assumption of adjudicatory jurisdiction, however, does not." At 1323. It hardly seems necessary to point out that a plaintiff need not detail each and every way in which a tribe may have acted unlawfully in crafted what looks like a "Tribal Ordinance" but which, as IRHA alleged, only purports to be and is in reality a piece of litigation gamesmanship with two signatures on the bottom.

That appellate decision is also useful for parsing out the differences between federal court's treatment of intra-tribal disputes, which are, in large part, addressed under the Indian Civil Rights Act, on the one hand, and, on the other hand, tribal regulatory and adjudicatory misconduct as to non-Indian businesses and non-Indians generally. This is discussed in more detail in the main brief lodged today. Citation to ICRA cases is wholly irrelevant to resolving the issues before this court and all the judges in *Hardin* at the circuit level saw that.

The point here is that the party who benefits from the litigation advantage afforded by tribal action – whether in league with the tribe or not – is also a proper party to be sued and preliminarily enjoined from getting any benefit from such advantage, which is just the situation that Defendant Almquist is in. It matters not whether she or her lawyer acted wrongfully; as

Memorandum in Support of IRHA's Motion for 60(b) Relief
*IRHA v. Almquist, et al.*
Case No. 4:06-CV-00018 RRB
Page 14

long as tribal action is challenged and she benefits from it, then she must defend her position in federal court as well.

The federal question issue involves an inquiry into whether the tribal court had exceeded the limits of its powers in a dispute with non-tribal members. If there is a functioning tribal court, the non-Indian business will have to go through tribal court and exhaust remedies there; but this loops back to the question of whether the tribal officials had authority to take the action that they did. *National Farmers* gave tribal actors an opportunity to conform their behavior, both to tribal and federal law, before and during litigation in federal court; however, it also did not require a business owner or operator to jump through a *Cort v. Ash*, *supra*, analysis – *where's the statute authorizing your private cause of action?* – and said so explicitly. "[I]n order to invoke a federal district court's jurisdiction under § 1331, it was not essential that the petitioners base their claim on a federal statute or a provision of the Constitution." It's hard to be more specific or pointed about the nature of the claims that businesses have when they intersect their rights – of federal or state dignity – with tribes.

*National Farmers* followed *Montana v. U. S.*, 450 U.S. 544, 101 S.Ct. 1245 (1981), where the court held that, when tribal jurisdiction over nonmembers is challenged, a federal question jurisdiction is thereby invoked. In *Montana v. U. S.*, the court held that

> the inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe. To be sure, Indian tribes retain inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians on their reservations, even on non-Indian fee lands. A tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements. A tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect

Memorandum in Support of IRHA's Motion for 60(b) Relief
*IRHA v. Almquist, et al.*
Case No. 4:06-CV-00018 RRB
Page 15

on the political integrity, the economic security, or the health or welfare of the tribe. *Id*. at 565-66

In turn, *Montana v. United States* had quoted with approval in *Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 102 S.Ct. 894 (1982) [tribal and gas severance tax upheld], and glossed as follows: "The Court has emphasized that 'exercise of tribal power beyond what is necessary to protect tribal self-government or to control internal relations is inconsistent with the dependent status of the tribes, and so cannot survive without express congressional delegation.'" *Id*. at 171. (citing *Montana v. United States*, supra.) At least on this authority, making law while litigants wait *and* by fax needs Congressional approval.

The paradigm developed has guided federal courts since then: tribal power over non-member business interests is a given; tribes wouldn't have sovereignty if they didn't have such power. However, the exercise of this power in specific cases can be challenged in federal court and declaratory and injunctive relief sought, even, as in *National Farmers*, to undo tribal action, such as an ordinance or judgment.[8]

Federal courts have had occasion to interpret the extent to which tribes may regulate business activities on reservations with entities that have *or lack* federal rights that they exercise on their own. In *Superior Oil Company v. United States*, 798 F.2d 1324 (10th Cir. 1986), the Tenth Circuit Court of Appeals held that, "in cases encompassing the federal question whether a tribal court has exceeded its lawful limits of jurisdiction involving an exercise of civil subject-matter jurisdiction in a case such as that presented here, the federal

---

[8] True, when tribal courts are operational and resort would not be futile, the non-member must challenge tribal court power over its business interests in tribal court first and exhaust such remedies.

Memorandum in Support of IRHA's Motion for 60(b) Relief
*IRHA v. Almquist, et al.*
Case No. 4:06-CV-00018 RRB
Page 16

district court is empowered to review a tribal court decision under 28 U.S.C. Sec. 1331." At

1329.

Tribal actors in the Navajo Tribe intentionally withheld approvals of assignments and

seismic requests in order to force re-negotiation of oil and gas leases, according to the non-

member, Superior Oil; much the same situation had come before the Tenth Circuit in *Tenneco*

*Oil Company v. Sac and Fox Tribe of Indians of Oklahoma*, 725 F.2d 572 (10th Cir. 1984).

There the Court of Appeals held that:

> [i]f the sovereign did not have the power to make a law, then the official by
> necessity acted outside the scope of his authority in enforcing it, making him
> liable to suit.  Any other rule would mean that a claim of sovereign immunity
> would protect a sovereign in the exercise of power it does not possess.  Id. at
> 574.

The *Tenneco Oil* court had occasion to observe the close relationship between the

judicial parsing of federal question and scope of authority issues.

> The presence or absence of federal question jurisdiction is to some extent tied to
> the sovereign immunity issue.  In a recent case construing the Foreign
> Sovereign Immunities Act, 28 U.S.C. § 1330, the Supreme Court observed that
> in cases involving a sovereign other than the United States "the primacy of
> federal concerns is evident" because of Congress' plenary power over foreign
> relations.  The analogy to Indian law is clear.  It was recognized early that
> Congress had plenary power to determine relations with the Indian tribes and the
> extent of Indian sovereignty over non-Indians.  An inquiry into whether
> Congress has in fact limited tribal sovereignty in a given case necessarily
> triggers federal concerns.  Id. at 575.

The Ninth Circuit has made this point crystal clear by issuing dicta in *Hardin v. White*

*Mountain Apache Tribe*, 779 F.2d 476 (9th Cir. 1985)(decided February 26, 1985), that make

that case on all fours with *National Farmers* and other business owner disputes with tribes.

Hardin was no businessman, unless you count stealing "solar panel cells and batteries" as an

occupation. Hardin had no business (or "consensual commercial") connection with the tribe,

Memorandum in Support of IRHA's Motion for 60(b) Relief
*IRHA v. Almquist, et al.*
Case No. 4:06-CV-00018 RRB
Page 17

unless you assume that his parents' ground lease of tribal land created such a relationship.  He was a troublemaker, born or bred, and he got banished from the reservation.

The Ninth Circuit was not content to allow the case to such a narrow focus, the right and duty of the tribe to keep thieves from stealing tribal property.  "When a nonmember has entered into a consensual commercial relationship with the Tribe or its members the Tribe retains inherent power to exercise civil authority over the conduct of the nonmember on fee lands within its reservation.  A tribe has power to place conditions on entry, on continued presence, or on reservation conduct.  A nonmember who enters the jurisdiction of the tribe remains subject to the risk that the tribe will later exercise its sovereign power.  The ordinance in question is just such a regulation of a nonmember's reservation conduct."  At 479.  But that is not all that the Ninth Circuit did.  The court made the dismissal turn on tribal sovereign immunity and Hardin's failure to make a scope of authority case to overcome *that* hurdle.

> Sovereign immunity shields the Tribe from any suit arising out of the proceeding.  This tribal immunity extends to individual tribal officials acting in their representative capacity and within the scope of their authority.  Because all the individual defendants here were acting within the scope of their delegated authority, Hardin's suit against them is also barred by the Tribe's sovereign immunity.  779 F.2d at 479-80.

As noted above, this analysis preceded by some weeks *National Farmers* (decided June 3, 1985) which reversed another panel (of 1984 vintage) of the Ninth Circuit for not granting injunctive relief to business entities (736 F.2d 1320 (9th Cir. 1984) decided July 3, 1984).  So when National Farmers as appellee found itself in the Ninth Circuit – beleaguered by litigation advantages wrongfully obtained and used against them by an Indian tribe – National Farmers lost, but did not lose on a *Cort v. Ash* analysis.  And when Hardin's case was analyzed by the Ninth Circuit (getting the result and analysis right weeks before the Supreme Court case in

Memorandum in Support of IRHA's Motion for 60(b) Relief
*IRHA v. Almquist, et al.*
Case No. 4:06-CV-00018 RRB
Page 18

*National Farmers* was decided) neither that panel of the Ninth Circuit *nor* the Supreme Court

brought in *Cort v. Ash*.[9]

Hardin relied on both *Merrion* and *Montana* and these authorities guided the Ninth

Circuit to anticipate the right result and reasoning:

> These are the leading authorities that establish a federal cause of action in a commercial consensual relationship between a tribe and a non-member over a business interest, whether the scope of relief that is sought is monetary damages or injunctive relief.  If it is injunctive relief, then the *Ex Parte Young* standard applies for obtaining injunctive relief to restrain the tribe from taking action to violate the plaintiff's rights.

The Ninth Circuit has never forgotten the lesson of *Hardin* anticipating, in dicta,

*National Farmers*.  In *Chilkat Indian Village v. Johnson*, 870 F.2d 1469 (9th Cir. 1989) the

court addressed a case in which the Indian tribe was the plaintiff and the non-Indian the

defendant, and properly applied a *Cort v. Ash* analysis.  However, in dicta, the court repeated

that non-tribal members who have business relationships that give rise to disputes with tribes

have cognizable claims for relief and can invoke federal question jurisdiction; but if they want

relief – as in rolling back tribal action – they have to be able to show tribal officials acting

outside the scope of their authority.  The *Chilkat* court held that "[w]hen the shoe is on the

other foot, and a non-Indian plaintiff challenges an exercise of tribal adjudicatory or legislative

power as being contrary to federal common law, the claim arises under federal law for purpose

---

[9] For IRHA's purposes, it is sufficient only to quote this sentence, to make the cognizable claim for relief and federal question points in this part of IRHA's brief, if a *Cort v. Ash* analysis is required, perhaps under a wide reading of this line from *Hardin*:  "The Tribe's ordinance [banishing Hardin] is totally dependent on United States law for determination of virtually all relevant issues of law and fact."'  At 479.  It hardly bears repeating that a "Tribal Ordinance" which is based on, interprets and quotes from federal law such as 25 U.S.C. Sec. 4137 is also an "ordinance … totally dependent on United States law for determination of virtually all relevant issues of law and fact."  At 479.  In order to understand what the tribal actors were doing when they adopted the purported "Tribal Ordinance" one has to read their deposition testimony.

Memorandum in Support of IRHA's Motion for 60(b) Relief
*IRHA v. Almquist, et al.*
Case No. 4:06-CV-00018 RRB
Page 19

of § 1331." At 1475 n. 10. (citing *National Farmers Union Ins. Cos. v. Crow Tribe,* 471 U.S. 845 (1985); *Cardin v. De La Cruz,* 671 F.2d 363 (9th Cir.) *cert. denied,* 459 U.S. 967 (1982)). With this, the court in *Chilkat* reversed the dismissal of the Village's claims against Johnson and affirmed the dismissal of the Village's claims against its tribal members. The Ninth Circuit also gave its dicta, like *Hardin,* that tribal violation of business rights can be challenged in federal court, the hurdle then being the sovereign immunity analysis, a point that *Hardin* elaborated a few years earlier.

But the "shoe" wasn't "on the other foot" in *Chilkat* because the Tribe was not a defendant. Hardin was a thief, not a businessman. In two cases in four years the Ninth Circuit underlined that a collision between tribes and business interests belong in federal court, and then the scope of authority analysis begins. These dicta are important because the Ninth Circuit must be trying to signal trial courts that business disputes with tribes are to be resolved on scope of authority analysis, with a record, even a summary judgment record, and not as a matter of apparent pleading deficiency/ies or the legislative history of the businessman's federal rights.

Take Hardin. He was in federal court and he was a thief.

Take Johnson the art dealer. If he had a beef with the Chilkat Indians over their ordinance, he could sue the tribe in federal court. Perhaps they would have a federal defense; perhaps not. But the art dealer wouldn't be thrown out of court without leave to amend and with prejudice because he did attempt to state a claim under Sec. 1331.

National Farmers didn't have a "federal private cause of action." It and its insured were getting worked over in tribal court.

Memorandum in Support of IRHA's Motion for 60(b) Relief
*IRHA v. Almquist, et al.*
Case No. 4:06-CV-00018 RRB
Page 20

The Burrells (discussed below) were tired of trespassers. They couldn't point to a federal law that said, *go sue the tribe if your fences are knocked down*.

As the *Tenneco* court reasoned, these disputes do not revolve around pleadings and the plaintiff certainly doesn't get thrown out of court because it has failed to anticipate all of the tribe's legal defenses and negate them in advance. These disputes engage a federal court into a "scope of authority" / *Ex Parte Young* reasoning based on the validity of tribal law and the legal authority of tribal actors.

For something more recent, take the Tenth Circuit's decision in *Burrell v. Armijo*, 456 F.3d 1159 (10th Cir. 2006), previously cited to the court: the non-Indians (Burrells) had a contract with the Santa Ana Pueblo Tribe, the beef revolving around alleged interference with his farming activities. At 1162-63. The federal district court dismissed the suit, holding that Burrells failed to exhaust tribal court remedies. On appeal, the Tenth Circuit observed that "[t]ribal courts have repeatedly been recognized as appropriate forums for the exclusive adjudication of disputes affecting important personal and property interests of both Indians and non-Indians." 456 F.3d at 1167. The *Burrell* court further observed as follows:

> The Supreme Court, citing the promotion of tribal self-government and principles of comity (as opposed to a jurisdictional prerequisite), has required litigants to exhaust their tribal court remedies before a district court may evaluate the existence of a tribal court's jurisdiction. This exhaustion policy provides a tribal court the first opportunity to examine its own jurisdiction, but is subject to the following exceptions: (1) where an assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith; 2) where the tribal court action is patently violative of express jurisdictional prohibitions; (3) where exhaustion would be futile because of the lack of an adequate opportunity to challenge the tribal court's jurisdiction; (4) when it is plain that no federal grant provides for tribal governance of nonmembers' conduct on land covered by the main rule established in *Montana v. United States*; or (5) it is otherwise clear that the tribal court lacks jurisdiction so that the exhaustion requirement would serve no purpose other than delay.

Memorandum in Support of IRHA's Motion for 60(b) Relief
*IRHA v. Almquist, et al.*
Case No. 4:06-CV-00018 RRB
Page 21

Allegations of local bias and tribal court incompetence, however, are not exceptions to the exhaustion requirement. After exhaustion is completed, litigants may seek federal court review of a tribal court's ruling that it had jurisdiction. But unless the district court finds the tribal court lacked jurisdiction or withholds comity for some other valid reason, it must enforce the tribal court judgment without reconsidering issues decided by the tribal court. At 1168. (citations omitted)

The tag line "where an assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith" is itself a quote from and citation to Justice Stevens' opinion for a unanimous court in *National Farmers*, *supra*, 471 U.S. at 857 n. 21 (1985). It would certainly comes as a surprise to the federal appellate judges that these Defendants can escape analysis of their conduct – and the factual record in progress tossed out the window – since the Miller Defendants clearly were acting from a "desire to harass or [was] conducted in bad faith": they have never possessed any pedigree for any official conduct in twenty years *and then* they sign a faxed "Tribal Ordinance" in a few minutes. And, of course, there is no tribal court in Dot Lake; there isn't even a constitution. And of course IRHA did plead (at ¶18) that Defendant Almquist did obtain her litigation advantage by getting a tribal order or ordinance mid-litigation which violates all known decencies under separation of powers and can hardly be a result intended by Congress – and if it is, then dismissal without leave to amend and with prejudice is medicine that is too strong for that pleading deficiency. In any event, the court has indicated its concern with this point, at n. 19 of its decision; but that is neither here nor there. The point is that there are facts that must be conceded to be true and which can not be swept aside on a motion to dismiss, by a party or *sua sponte*. These are typical of facts in many non-member / tribe disputes. Once a factual record is made, IRHA is confident the court

Memorandum in Support of IRHA's Motion for 60(b) Relief
*IRHA v. Almquist, et al.*
Case No. 4:06-CV-00018 RRB
Page 22

will be able to take a fresh look at the underlying issues, with or without an amended pleading from IRHA.

Discussed above are the leading authorities that establish a federal cause of action in a "commercial consensual relationship" between a tribe and a non-member over business dealings: here a failed transfer of a triplex following on a long term ground lease, the factual predicates in both *Hardin* and *Burrell*, by the way.

There is also another aspect to this court's mistake, which is its insistence that IRHA conceded that it does not have a private cause of action. "Because IRHA concedes it has no private cause of action to enforce the terms of NAHASDA, and because 'there is no provision [in] NAHASDA which prevents a tribe from enacting an ordinance that would regulate the activities of IRHA,' the court concludes "IRHA's complaints do <u>not</u> give rise to a cognizable federal cause of action.'" November 2, 2006 Order at p. 6.[10]

IRHA has never conceded that and, in fact, has repeatedly insisted that it does have a private cause of action cognizable in federal court and has cited the court to the leading authorities in that regard. These are in order: *Montana v. U. S.*, 450 U.S. 544, 101 S.Ct. 1245 (1981); *Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 102 S.Ct. 894 (1982); *National Farmers Union Ins. Cos. v. Crow Tribe,* 471 U.S. 845, 851 (1985) at the Supreme Court level; and *Burrell v. Armijo*, 456 F.3d 1159 (10th Cir. 2006); *Tenneco Oil Company v. Sac and*

---

[10] IRHA has pointed out that the Court is mistaken in its determination that IRHA has conceded that "it has no private right of action to enforce the terms of NAHASDA," by citing to *Solomon v. Interior Regional Housing Authority*, 313 F.3d 1194 (9th Cir. 2002). *Solomon*, however, does not stand for the proposition that NAHASDA does not afford a private right of action, and certainly does not address the right to sue of named and defined beneficiaries of its programs. *Solomon* stands for the proposition that the Indian Self-Determination and Education Assistance Act, 25 U.S.C. § 450e, does not provide a private right of action to an employee of a tribe or housing authority.

Memorandum in Support of IRHA's Motion for 60(b) Relief
*IRHA v. Almquist, et al.*
Case No. 4:06-CV-00018 RRB
Page 23

*Fox Tribe of Indians of Oklahoma*, 725 F.2d 572 (10th Cir. 1984); *Superior Oil Company v. United States*, 798 F.2d 1324 (10th Cir. 1986) and *Hardin v. White Mountain Apache Tribe*, 779 F.2d 476 (9th Cir. 1985) at the circuit level, along with other authorities.

There is a third prong to the error committed by the court. As this court concluded that Almquist's first motion to dismiss should be treated as a motion for summary judgment and that Rule 56(f) development of the facts should be required, it does not comport with court rules and the caselaw in this area for this court, *without notice* and *without affording IRHA an opportunity to amend* to dismiss a case with prejudice based on any perceived deficiency in pleadings. For this court to insist that IRHA's pleading was deficient in the first place is only to say that, by inference, that this court was wrong to have ordered Rule 56(f) relief.

The court may be completely or serenely confident in what powers tribes do or don't have – eviction ending, housing regulatory, *ex post facto* – in Dot Lake under NAHASDA. But the question will always come down to this. Did the tribe ever actually exercise any such power? And in asking this question, the legal question of whether Congress could have intended that a tribe can legally block the exercise of rights already acquired by a NAHASDA landlord through a lease already in place before the eviction ending ordinance was adopted?

What the court did was the functional equivalent of vacating all of the Rule 56(f) relief previously granted, striking the depositions and holding in essence *nunc pro tunc* that IRHA's complaint was deficient and could never be further developed, either factually or as a matter of pleading. In any event, under the standards developed above, IRHA should have the opportunity to amend and leave to amend should be granted so that IRHA can re-plead, if that is the desire of the court. At least the appellate record will become modestly clearer.

Memorandum in Support of IRHA's Motion for 60(b) Relief
*IRHA v. Almquist, et al.*
Case No. 4:06-CV-00018 RRB
Page 24

To summarize, and as explained more fully in IRHA's Motion for Partial Summary Judgment, the analysis of why the Federal District Court's jurisdiction can be invoked under U.S.C. §1331 does not turn on a *Court v. Ash* analysis because IRHA has a right "to be protected against an unlawful exercise of tribal court judicial power [which] has it's source in federal law because federal law defines the outer boundaries in Indian Tribes' power over non-Indians." *National Farmers* at 851.

## III.    Conclusion

For the above reasons, IRHA's Motion for Rule 60(b) relief should be granted.    A proposed Order is lodged herewith.

The court should:

1.        Reopen the case, vacate its Order Granting Almquist's Motion to Dismiss Count I *in toto*, order that IRHA's Motion for Partial Summary Judgment is timely filed, order that both oppositions to the pending Dot Lake and Miller Defendants' motions to dismiss is timely filed, and require all defendants to respond to IRHA's Motion for Partial Summary Judgment and afford all parties the opportunity to file reply briefs under the local rules and request oral argument.

In the alternative, the court should:

2.        Reopen the case, vacate its Order Granting Almquist's Motion to Dismiss Count I in part, as explained here, give IRHA 15 days to file a motion to amend complaint as to Defendant Almquist only and lodge a proposed amended complaint, order that IRHA's Motion for Partial Summary Judgment is timely filed as to the Dot Lake and Miller Defendants only, order that both oppositions to the pending Dot Lake and Miller Defendants' motions to dismiss

Memorandum in Support of IRHA's Motion for 60(b) Relief
*IRHA v. Almquist, et al.*
Case No. 4:06-CV-00018 RRB
Page 25

are timely filed, and require such defendants to respond to IRHA's Motion for Partial Summary Judgment, afford parties the opportunity to file reply briefs (or a cross motion) under the local rules and request oral argument on said motions.

DATED in Fairbanks, Alaska this 6th day of November, 2006.

ASCHENBRENNER LAW OFFICES, INC.
Attorneys for Plaintiff IRHA


By: ___/s/ Peter J. Aschenbrenner
      Peter J. Aschenbrenner
      Bar No. 7210037

Memorandum in Support of IRHA's Motion for 60(b) Relief
*IRHA v. Almquist, et al.*
Case No. 4:06-CV-00018 RRB
Page 26