# DOCUMENTS ATTACHMENT NO. 23

IN THE DISTRICT COURT FOR THE STATE OF ALASKA

FOURTH JUDICIAL DISTRICT

| | |
|---|---|
| INTERIOR REGIONAL HOUSING AUTHORITY<br>    Plaintiff, | )<br>)<br>)<br>) |
| vs. | )<br>) |
| BARBARA ALMQUIST,<br>    Defendant. | )<br>)<br>) |

Case No. 4FA-06-1421 CI

### DEFENDANT'S SUPPLEMENTAL (REPLY) MEMORANDUM

In its trial brief, IRHA argues that 1) there was no lease, 2) if there was a lease, it was month to month, and 3) NAHASDA provides no limitation on termination of tenancy.

### I. FEDERAL LAW PROVIDES LOW INCOME TENANT PROTECTIONS INCONSISTENT WITH IRHA'S PROPOSED OUSTER.

As noted earlier, IRHA is a public housing authority, which is governed by federal regulations. It is anticipated that IRHA will somehow argue that it is an "Indian" housing authority, which is different than a public housing

Michael J. Walleri
*Attorney at Law*
330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

Entry of Appearance
IRHA v. Almquist/4FA-06-1421 CI
Page 1 of 7

authority. The rationale for this argument is not fully known. Needless to say, the AS 18.55.955 and AS 18.55.100-960, which are incorporated by reference, render IRHA a public housing authority.

Moreover, IRHA is simply incorrect that NAHASDA does not restrict IRHA's activity. In particular, 25 USCA 4137 provides lease requirement, which require that tenants of NAHASDA programs have lease, and specifies that the lease provide

> (5) require that the owner or manager may not terminate the tenancy, during the term of the lease, except for serious or repeated violation of the terms or conditions of the lease, violation of applicable Federal, State, tribal, or local law, or for other good cause; and

There are two parts of this statute that should be emphasized. First, the statute restricts the owner from terminating the "tenancy"; not the lease. Thus, The statute does not define "good cause", however, it should be informed by federal law. More often than not, "good cause" within the public housing law means a tenant's acts of omission or commission which is inimical to the safe, legal, non-nuisance use of the property.[1] "Good cause" must have some connection with the tenant's conduct. IRHA has never argued that the tenant

---

[1] *RFT & Associates v. Smith*, 419 N.W.2d 109 (Minn.App., Feb 09, 1988); *Cimarron Village v. Washington*, 659 N.W.2d 811 (Minn.App., Apr 22, 2003); *Maxton Housing Authority v. McLean*, 313 N.C. 277, 328 S.E.2d 290 (N.C., Apr 02, 1985); *In re Turner*, 326 B.R. 563 (Bankr.W.D.Pa., Jun 14, 2005); *Associated Estates Corp. v. Bartell*, 24 Ohio App.3d 6, 492 N.E.2d 841, 24 O.B.R. 28 (Ohio App. 8 Dist., CuFeb 25, 1985); *Bowling Green Manor Ltd. Partneship v. LaChance*, Not Reported in N.E.2d, 1995 WL 386496 (Ohio App. 6 Dist., WoJun 30, 1995); *Royal Oak Apartments v. Solt*, 155 N.C.App. 221, 573 S.E.2d 773 (Table, Text in WESTLAW), Unpublished Disposition, 2002 WL 31894957 (N.C.App., Dec 31, 2002); *R & D Realty v. Shields*, 196 N.J.Super. 212, 482 A.2d 40 (N.J.Super.L., May 31, 1984)

Michael J. Walleri
Attorney at Law
330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

Entry of Appearance
IRHA v. Almquist/4FA-06-1421 CI
Page 2 of 7

engaged in conduct amounting to good cause. Therefore, NAHASDA would prohibit termination of the "tenancy".

## II. THERE WAS CLEARLY A LEASE RELATIONSHIP.

Apart for the federal regulations applicable to public housing authorities, and NAHASDA, lease provisions would suggest that the termination of the tenancy was not justified. As noted in the previous filing, there is amble reason to believe that a lease relationship existed between IRHA and Ms. Almquist. In summary, a lease was created by the following:

1) The August 22, 2003, lease between IRHA and Jason Corgill and Barbara Almquist, which listed Mr. Coghill as the Tenant and Ms. Almquist as a member of the household.[2]

2) The April 15, 2005, written agreement between IRHA (signed by Robin Johnson) and Ms. Almquist in which Almquist agreed to make payments due under the lease.[3]

3) Operation of AS 34.03.030 (agreement has the same effect as if it were signed and delivered where a landlord fails to sign and deliver

---

[2] See Def. Ex. B
[3] Def.. Ex. F

Michael J. Walleri
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

Entry of Appearance
IRHA v. Almquist/4FA-06-1421 CI
Page 3 of 7

a written rental agreement to the tenant, accepts rent without reservations)

4) The course of dealings between the parties, in which IRHA treated Almquist as the principal tenant, including

    a. Transferring utilities into her name,

    b. Transferring internal accounts into her name

    c. Threatening to evict her for non-compliance with the lease,

    d. Requiring Almquist to "re-certify" as income eligible for the apartment.

There can be little question that Almquist and IRHA had a tenant/landlord relationship, and that if Almquist had not been a "tenant" under the original lease, she has certainly assumed the lease since that time. More to the point, in giving Almquist notice to terminate the lease, IRHA clearly stated that it was terminating the lease under the provisions of "Part A, Section 7 of the IRHA Landlord-Tenant Rental Contract entered into on August 22, 2003...."[4] As noted above, federal law (NAHASDA) requires that there be a lease between all tenants in NAHASDA funded housing and the

---

[4] Plaintiff's Ex. 5

Michael J. Walleri
Attorney at Law
330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

Entry of Appearance
IRHA v. Almquist/4FA-06-1421 CI
Page 4 of 7

housing authority.[5] If no lease existed, federal law would require that a lease be imputed to IRHA. Clearly, there was a lease.

### III. THE LEASE WAS NOT A MONTH TO MONTH.

a) <u>The "Tenancy" May Only Be Terminated For Specific Enumerated Reasons.</u> While Part A of the lease claims that the lease is a month to month lease, Part B of the lease, provides conditions and terms which are inconsistent with a month to month tenancy. The lease is a form lease written by IRHA, and should be construed strictly against IRHA.[6] Specifically, the contract provides that the <u>tenancy</u> may not be terminated by IRHA excepted under certain conditions,[7] which include serious and repeated violations of lease, violations of law, criminal activity, and "other good cause". As noted above, consistent with NAHASDA, the lease uses the term "tenancy' as opposed to "lease' with regard to termination. It does not state that the lease" may be terminated; rather it states that the 'tenancy' may be terminated under certain conditions. In this regard, the lease uses the broader term which distinguishes between terminating the "tenancy" as

---

[5] 25 USC 4137
[6] See *Burgess Constr. Co. v. State*, 614 P.2d 1380 (Alaska, 1980) (description of Alaska law on adhesion contract) Cf. *Vinson v. Greenburgh Housing Authority*, 29 A.D.2d 338 (NY App. 1968)
[7] See Def. Ex. B, p. 3 (Part B; Sec. 7)

Michael J. Walleri
*Attorney at Law*
330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

Entry of Appearance
IRHA v. Almquist/4FA-06-1421 CI
Page 5 of 7

opposed to terminating the "lease." Clearly, the lease is not a standard month to month lease because it clearly states that the "tenancy" can be terminated under certain situations. Rather, the lease is a continuing automatic renewable rental agreement that may only be terminated under specific conditions.

Additionally, the lease requires that IRHA give notice of the reason for the eviction.[8]

b) <u>The Enumerated Reasons Do Not Exist.</u> IRHA acknowledges that Almquist has brought the rent current, which was delinquent Coghill. IRHA does not allege that Almquist is engaged in criminal activity, nor violating any law. Rather, the notice provided Almquist merely indicated that "IRHA has decided to not use these premises for rentals pending sale or renovation". Such "reasons' do not constitute "good cause".

The lease defines "good cause as including sale of property, renovation of unit, or desire to rent for higher rent. But the stated reason for the eviction

---

[8] Id., at 4 [Part B; Sec. 7(f)]

Michael J. Walleri
Attorney at Law
330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

Entry of Appearance
IRHA v. Almquist/4FA-06-1421 CI
Page 6 of 7

is not within this definition.[9]  Rather, the notice actually provides that that "IRHA has decided to not use these premises for rentals pending sale or renovation". In other words, it now appears that IRHA intends to simply take the property out of service (i.e. mothball) and to no longer use the property for "affordable" housing. It does not intend to sell or transfer the property. It does not intend to rent for higher rents. It does not intend to renovate the property. In other words, it does not intend to do any of those things that it states fall within the definition of "good cause'. Simply mothballing the facility is not "good cause' within the definitions used in the lease.

Dated this 16TH day of May, 2006.

Michael J. Walleri
AK Bar #7906060

Certificate of Service
I certify that a true and correct copy of the foregoing was served on the 16TH day of May, 2006 via FAX and mail to:

Mr. Peter Aschenbrenner
Aschenbrenner P.O. Box 92090
Anchorage, AK 99509

---

[9] IRHA earlier alleged that they intended to transfer the property to the Dot Lake Tribal Government. In the process of defending this action, it has not become clear that Dot Lake Tribal Government will not accept the transfer of this property. It has been known by IRHA that this will not occur prior to this eviction.

Entry of Appearance
IRHA v. Almquist/4FA-06-1421 CI
Page 7 of 7

Michael J. Walleri
Attorney at Law
330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725