# DOCUMENTS ATTACHMENT NO. 24

IN THE DISTRICT COURT FOR THE STATE OF ALASKA
FOURTH JUDICIAL DISTRICT

INTERIOR REGIONAL HOUSING )
AUTHORITY )
        Plaintiff, )
)
vs. )
)
BARBARA ALMQUIST, )
        Defendant. )
_____ )

Case No. 4FA-06-1421 CI

### DEFENDANT'S SECOND SUPPLEMENTAL BENCH MEMORANDUM

It has now been clarified that the reason IRHA wishes to terminate Ms. Almquist's tenancy is because they wish to close down the tri-plex in Dot Lake. IRHA does not plan to demolish or dispose of the tri-plex. IRHA simply wishes to reduce its operational costs and "moth-ball" the facility.

The parties agree that 25 USC 4137 (i.e. NAHASDA) applies to these proceedings, which states in part,

> Except to the extent otherwise provided by or inconsistent with tribal law, in renting dwelling units in affordable housing assisted with grant amounts provided under this chapter, the owner or manager of the housing shall utilize leases that—
>
> (5) require that the owner or manager may not terminate the tenancy, during the term of the lease, except for serious or repeated violation of the terms or

Michael J. Walleri
Attorney at Law

330 Wendell St., Suite 5
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4715

Def. Second Suppl. Memo
IRHA v. Almquist/4FA-06-1421 CI
Page 1 of 8

conditions of the lease, violation of applicable Federal, State, tribal, or local law, <u>or for other good cause</u>; and

25 USC 4137(a)(5) Neither NAHASDA nor the regulations promulgated specific to NAHASDA[1] define what constitutes "good cause". The critical question, therefore, is whether IRHA's stated reasons is good cause to terminate the tenancy under NAHASDA. As noted below, the mothballing of the tri-plex is not good cause.

Additionally, §4137 of NAHASDA clearly requires that the owner or manager may not terminate the tenancy except for violation of applicable "tribal law". The termination of the tenancy would violate tribal law.

I.  **"Mothballing" the Tri-plex Is Not Good Cause.**

IRHA argues that it has good cause to terminate the tenancy based upon economic reasons; i.e. a reduction of operating costs. However, such a proposed "mothballing" is not allowed under NAHASDA, and therefore cannot be "good cause" within the meaning of NAHASDA.

Michael J. Walleri
Attorney at Law

330 Wendell St., Suite B
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

---

[1] See 24 CFR Part 1000

Def. Second Suppl. Memo
<u>IRHA v. Almquist</u>/4FA-06-1421 CI
Page 2 of 8

While stat law limits IRHA's ability to dispose of its facility,[2] NAHASDA would permit IRHA to demolish the facility. 42 CFR Part 1000.134.[3] However, NAHASDA prohibits IRHA from simply mothballing the facility during its useful life. Specifically, Section 205(a)(2) [25 USC 4135(a)(2)] provides:

> each dwelling unit in the housing will remain affordable, according to binding commitments satisfactory to the Secretary, for the remaining useful life of the property (as determined by the Secretary) without regard to the term of the mortgage or to transfer of ownership...[4]

The statute defines "affordable housing" to mean "housing that complies with the requirements for affordable housing under subchapter II of this chapter." 25 USC 4103(2)  NAHASDA further provides "Affordable housing activities under this subchapter are activities, in accordance with the requirements of this subchapter, to develop or to support affordable housing for rental or homeownership ..." 25 USC 4132. As indicated by Defendant's Exhibit K, the

---

[2] As indicate in prior briefing, there are state law limits on the disposal of IRHA property, with which IRHA has not complied. See Deft. Bench Memo (May 10, 2006 at, 10-11

[3] Quoted at Plt. Supplemental Memo, at 5  But for the limitations of state law, NAHSDA would also allow disposal.

[4] The NAHASDA regulations clarify that housing assisted under NAHASDA must remain "affordable" during its useful life. 24 CFR Part 1000.142 provides

> What is the "useful life" during which low-income rental housing and low-income homebuyer housing must remain affordable as required in sections 205(a)(2) and 209 of NAHASDA?
>
> Each recipient shall describe in its IHP its determination of the useful life of each assisted housing unit in each of its developments in accordance with the local conditions of the Indian area of the recipient. By approving the plan, HUD determines the useful life in accordance with section 205(a)(2) of NAHASDA and for purposes of section 209.

Michael J. Walleri
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

Def. Second Suppl. Memo
IRHA v. Almquist/4FA-06-1421 CI
Page 3 of 8

Secretary has determined that new construction under NAHASDA shall have a twenty (20) year useful life. The obligation under §4135(a)(2) requires that once IRHA has used NAHASDA funds to construct new housing, that housing must remain "affordable" for a minimum of twenty (20) years; that is to say, that IRHA must use the facility to provide housing for low-income or otherwise eligible tribal members. It may not simply close the facility and leave it idle. This does not mean that IRHA has no choices. It might demolish the facility if it receives HUD approval. It might dispose of the facility if it receives HUD approval and complies with state law. However, as long as IRHA continues to retain ownership of the property, the facility must "remain' affordable housing for its useful life; i.e. twenty years. As the testimony of Robin Johnson indicated, this facility was built after 1996, which means that its useful life continues until at least 2016. Clearly, IRHA may not mothball the facility under NAHASDA.

The "good cause" provision of NAHASDA must be read in a manner consistent with the other terms of NAHASDA. The act of mothballing a rental facility under NAHASDA cannot be good cause within the meaning of NAHASDA because NAHASDA prohibits the housing authority from simply mothballing the facility in the first place. IRHA's stated reason for terminating the tenancy is not good cause within the meaning of NAHASDA.

Michael J. Walleri
Attorney at Law
130 Wendell St., Suite 2
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

Def. Second Suppl. Memo
IRHA v. Almquist/4FA-06-1421 CI
Page 4 of 8

## II. The Eviction Is Not Consistent With Tribal Law.

NAHASDA [25 USC 4137] clearly requires that leases must comply with tribal law.[5] As Robin Johnson indicated in her testimony, the funds used for this facility are Dot Lake Tribe's NAHASDA allocations. Clearly, the operative tribal law is the law of the Native Village of Dot Lake. During the pendancy of this litigation, the Dot Lake Tribal Council passed the accompanying ordinance,[6] entitled "Native Village of Dot Lake Housing Ordinance". The ordinance applies to all tribal public housing, which is defined as any "any multi-family housing dwelling unit constructed using Dot Lake Tribal allocations under the Native American Self Determination and Housing Assistance Act (NAHASDA) and operated by a Tribally

---

[5] 25 USC 4137(a) provides

(a) Leases
Except to the extent otherwise provided by or inconsistent with tribal law, in renting dwelling units in affordable housing assisted with grant amounts provided under this chapter, the owner or manager of the housing shall utilize leases that—
...
(3) require the owner or manager to give adequate written notice of termination of the lease, which shall be the period of time required under State, tribal, or local law;
(4) specify that, with respect to any notice of eviction or termination, notwithstanding any State, tribal, or local law, a resident shall be informed of the opportunity, prior to any hearing or trial, to examine any relevant documents, records, or regulations directly related to the eviction or termination;
(5) require that the owner or manager may not terminate the tenancy, during the term of the lease, except for serious or repeated violation of the terms or conditions of the lease, violation of applicable Federal, State, tribal, or local law, or for other good cause; and ...

[6] Def. Ex L

Michael J. Walleri
Attorney at Law
330 Wendell St. Suite B
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

Def. Second Suppl. Memo
IRHA v. Almquist/4FA-06-1421 CI
Page 5 of 8

Designated Housing Entity designated by the Native Village of Dot Lake under the terms of NAHASDA."[7] Clearly, the Dot Lake Tri-plex is subject to the ordinance.

The ordinance requires that all leases comply with 24 CFR Part 966.[8] As previously noted by the Court, those regulations --- generally applicable to public housing authorities --- provide that leases be year to year, and define "good cause" for eviction in a manner that does not include a landlord's economic reasons.[9] More to the point, the tribal ordinance allows eviction for "good cause," which is defined as meaning

---

[7] DLTO 06-01.01, §2
[8] Id, at §3
[9] Specifically, the regulations define good cause to terminate a tenancy as follows:
Other good cause. Other good cause includes, but is not limited to, the following:

   (A) Criminal activity or alcohol abuse as provided in paragraph (1)(5) of this section;

   (B) Discovery after admission of facts that made the tenant ineligible;

   (C) Discovery of material false statements or fraud by the tenant in connection with an application for assistance or with reexamination of income;

   (D) Failure of a family member to comply with service requirement provisions of part 960, subpart F, of this chapter—as grounds only for non-renewal of the lease and termination of tenancy at the end of the twelve-month lease term; and

   (E) Failure to accept the PHA's offer of a lease revision to an existing lease: that is on a form adopted by the PHA in accordance with Sec. 966.3; with written notice of the offer of the revision at least
60 calendar days before the lease revision is scheduled to take effect; and with the offer specifying a reasonable time limit within that period for acceptance by the family.

Michael J. Walleri
Attorney at Law

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

Def. Second Suppl. Memo
IRHA v. Almquist/4FA-06-1421 CI
Page 6 of 8

> For the purposes of this section and 25 USC 4137, the term "good cause" shall mean the tenants act or failure to act causing harm to the premises, personal property or rights of other tenants, tribal members or the general public, including the quite enjoyment of real property by other tenants, or adjacent land owners.

DLTO 06-01-01, §3

This is consistent with the general provisions regulating public housing authorities nationwide, which define "good cause" for eviction within the public housing law to mean a tenant's acts of omission or commission which is inimical to the safe, legal, non-nuisance use of the property.[10] In this sense, the tribe has merely adopted the generally applicable rules governing public housing authorities nationally.

Finally, the ordinance has an effective date that would apply to this case; i.e. to any legal proceedings in which final judgment shall not have been rendered prior to enactment of this ordinance.[11] As a general matter, a legislative body may enact

---

[10] *RFT & Associates v. Smith*, 419 N.W.2d 109 (Minn.App., Feb 09, 1988); *Cimarron Village v. Washington*, 659 N.W.2d 811 (Minn.App., Apr 22, 2003); *Maxton Housing Authority v. McLean*, 313 N.C. 277, 328 S.E.2d 290 (N.C., Apr 02, 1985); *In re Turner*, 326 B.R. 563 (Bankr.W.D.Pa., Jun 14, 2005); *Associated Estates Corp. v. Bartell*, 24 Ohio App.3d 6, 492 N.E.2d 841, 24 O.B.R. 28 (Ohio App. 8 Dist., CuFeb 25, 1985); *Bowling Green Manor Ltd. Partneship v. LaChance*, Not Reported in N.E.2d, 1995 WL 386496 (Ohio App. 6 Dist., WoJun 30, 1995); *Royal Oak Apartments v. Solt*, 155 N.C.App. 221, 573 S.E.2d 773 (Table, Text in WESTLAW), Unpublished Disposition, 2002 WL 31894957 (N.C.App., Dec 31, 2002); *R. & D Realty v. Shields*, 196 N.J.Super. 212, 482 A.2d 40 (N.J.Super.L., May 31, 1984)
[11] DLTO 06-01.01, §7

Michael J. Walleri
Attorney at Law
330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

Def. Second Suppl. Memo
IRHA v. Almquist/4FA-06-1421 CI
Page 7 of 8

statues applicable to on-going litigation. *Walleri v. Federal Home Loan Bank*, 83 F.3d 1575, 1579 (9th Cir., 1996); *Estate of Reynolds v. Martin*, 985 F.2d 470 (9th Cir., 1993)

## CONCLUSION

The Court should deny IRHA's FED action.

Dated this 1ST day of June, 2006.

Michael J. Walleri
AK Bar #7906060
Attorney for Defendant

Certificate of Service
I certify that a true and correct copy of the foregoing
was served on the 1st day of June, 2006 via in fax and mail to:

Mr. Peter Aschenbrenner
Aschenbrenner P.O. Box 92090
Anchorage, AK 99509

Michael J. Walleri
Attorney at Law
330 Wendell St., Suite B
Fairbanks, Alaska 99701
(907) 452-1716
FACSIMILE
(907) 452-1725

Def. Second Suppl. Memo
IRHA v. Almquist/4FA-06-1421 CI
Page 8 of 8