```
 1               disagree with it.
 2                    MR. ANDREWS:  I'll object to any request
 3     for -- that constitutes a request for a legal opinion.
 4                    MR. ASCHENBRENNER:  Okay.  Thank you.
 5  Q    Is there anything -- are you -- strike that.  Are you
 6       familiar with the term, affirmative action or majority
 7       vote?
 8  A    The only affirmative action I know deals with race and
 9       employment and affirmative action there.  Majority vote
10       is the majority of the people that are voting, would be
11       the majority vote.
12  Q    Okay.  Is there any requirement in the 1986
13       constitution that one, two, three, whatever the number
14       is, is the number required for a majority vote of the
15       tribal council members?
16                    MR. ANDREWS:  If you want to refer to the
17     constitution first, go ahead.
18  A    There is -- there is nothing I read anywhere in the
19       constitution, and I'll answer again, that refers to a
20       quorum or a majority of the council that -- that I can
21       see in there.
22  Q    Okay.  Thank you.  Now, when did the subject of
23       the -- of this ordinance, 060101, first come up in
24       interactions with Walleri's law office?
25  A    During the court action on the -- the eviction of
```

```
 1        Barbara Almquist.
 2   Q    Okay.  And can you give me a date?
 3   A    Not an exact date, no, sir.
 4   Q    Okay.  Well, how many -- do you remember how many days
 5        it was before June 1st?
 6   A    Re- -- okay.  To discuss this or to discuss the case
 7        itself?  Discuss the ordinance or to discuss the case
 8        itself?
 9   Q    Let's go back and talk about the case.  Maybe you can
10        start with the case and go forward.  Hadn't you
11        already -- by June 1st, hadn't you already testified in
12        state court?
13   A    I.....
14             MR. ANDREWS:  I think we've lost what the
15   question is.  What -- where are we?
16             MR. ASCHENBRENNER:  I want the interchange
17   between Mr. Miller and then obviously we'll get Mr. Chuck
18   Miller and Mr. Walleri, and I was thinking that the easiest
19   thing for Mr. Miller to do would be to go back and tell us what
20   discussions they had about the case.
21             MR. ANDREWS:  Okay.  I see where we are.  Now,
22   what do you want to know from that?
23   Q    Okay.  Do you remember the first time you talked to
24        Mr. Walleri or he talked to you about the case, the
25        Almquist eviction?
```

**LIZ D'AMOUR & ASSOCIATES, INC.**
330 Wendell Street, Suite A
Fairbanks, Alaska 99701
(907) 452-3678

| | | |
|---|---|---|
| 1 | A | I don't -- I cannot recall dates. I can recall |
| 2 | | that -- as far as discussion between Mr. Walleri and |
| 3 | | myself, when the case went in -- was in state court, I |
| 4 | | was asked if I was willing to testify in state court by |
| 5 | | Mr. Walleri and I said, yes. And we had discussed |
| 6 | | testimony; we discussed the history of the triplex; we |
| 7 | | had discussed the history of tenants in the triplex; we |
| 8 | | discussed the attempted eviction of Ms. Almquist; we |
| 9 | | discussed the utilization of the triplex; we discussed |
| 10 | | the housing shortage in the village; the reason for the |
| 11 | | triplex being there; how it got there. We went through |
| 12 | | a lot of the -- the history of the triplex. I was |
| 13 | | asked if we have any type of a housing ordinance in |
| 14 | | place and I said, no. And Mr. Walleri basically said, |
| 15 | | well, if there's housing ordinance, then this could |
| 16 | | help keep the -- Chuck, keep the background down. This |
| 17 | | could help the -- the case and help basically keep our |
| 18 | | triplex open. And I said, well, we don't have a |
| 19 | | housing ordinance. And I asked, do you have a draft of |
| 20 | | any or do you have any that you may have seen? And he |
| 21 | | said he could send me a -- a draft ordinance, which he |
| 22 | | did. And when I got it, I got a hold of Charles or |
| 23 | | Chuck and we read over it, looked at it, and felt that |
| 24 | | this was a way to protect the triplex, to protect the |
| 25 | | tenants, and to keep available housing in the village, |

```
 1              which we are in dire need of.  And therefore -- and
 2              I'll go back to the constitution for the good of
 3              the -- the village and for the good of our tribal
 4              members.  And that's part of the council's job.
 5              Therefore, we passed a reso- -- or passed the
 6              ordinance.
 7     Q        Okay.  Thank you.  And one of the tribal members is
 8              Mrs. Almquist?
 9     A        She's a Tanacross tribal member, but she resides and
10              works in Dot Lake.
11     Q        Okay.  And did you read it before you signed it?
12     A        Yes, sir.
13     Q        Okay.  And do you know -- go ahead.  And do you know
14              about how long it took from the time it was faxed in
15              until the time it was faxed out?
16     A        No.  And if you're looking at date stamps up there, I
17              wouldn't depend on them.
18     Q        Okay.
19     A        Because I know my -- ours, we've never changed at
20              daylight savings or whatever have you and we have power
21              outages and our machine go, pfft.  And I don't even
22              know what time they are.
23     Q        Okay.  Well, let's go ahead and flip to page 2 of the
24              ordinance.  Actually, let's go to page 3, if you don't
25              mind.
```

LIZ D'AMOUR & ASSOCIATES, INC.
330 Wendell Street, Suite A
Fairbanks, Alaska 99701
(907) 452-3678

50

1  A    Yes.
2  Q    Okay. But did you and Mr. Chuck Miller do anything
3       other than read the proposed ordinance and sign it and
4       fax it back?
5  A    We read it, discussed it, and signed it, sent it back.
6  Q    Okay. Thank you. Now, on the very last page -- again,
7       we're staying with the last page here. The effective
8       date, did you understand the impact of Section VII and
9       the effective date?
10 A    Yes.
11 Q    What was your understanding as to what that was going
12      to accomplish?
13 A    That this could possibly be used in the legal
14      proceedings that were going on.
15 Q    Okay.
16 A    And that it would -- could be used to prevent eviction
17      of Barbara Almquist.
18 Q    And is that a result that you wanted to see happen?
19 A    Yes, sir.
20 Q    Okay. And is there any other effect -- does this
21      housing ordinance have some other effect that you
22      understand beyond the Almquist eviction?
23 A    It affects any tenant that comes into that unit as long
24      as it's operational. And can I expand a little bit on
25      that?

1  Q    Yeah, please, go ahead.
2  A    And our feeling here is basically that triplex was
3  built as low-income housing. And low-income housing is
4  going to be expected not to make a profit. It could be
5  somewhat of a financial burden. And there's no reason
6  why units should be shut down and low-income people
7  evicted that cannot find housing when that's what the
8  place was designed for. And when two out of three
9  units are left vacant, they have been trying to put her
10 out of there since last fall. And those other two
11 units have remained vacant all that time and they stand
12 there on a basis of financial hardship and it's pretty
13 hard to understand. And living in the village, I
14 cannot understand why.
15 Q    Okay. Is there -- does that same reasoning apply to
16 the villages -- village council's refusal to follow
17 through with ordinance reflective in resolution 2004,
18 10-04-04, which is depo 4?
19 A    That was not a.....
20       MR. ANDREWS: If you want to look at depo 4
21 first.....
22 A    All right. That wasn't an ordinance; that was a
23 resolution. Is that correct?
24 Q    Okay.
25 A    Basically because of the cost, that we could not bear

|    |   |   |
|----|---|---|
| 1  |   | the cost.  That's when we realized that it would be too |
| 2  |   | expensive for us as a small village, a small tribe to |
| 3  |   | operate that unit.  We're not set up with any type of |
| 4  |   | subsidy for low-income housing.  If we took it, we |
| 5  |   | would be strapped with all the expenses. |
| 6  | Q | Okay.  And are you sure or unsure about whether there |
| 7  |   | was a previous draft of this ordinance? |
| 8  | A | I'm unsure. |
| 9  | Q | Okay.  There might be or there might not be? |
| 10 | A | There -- there might or might not be. |
| 11 | Q | Okay.  And was Mr. Walleri acting as your lawyer when |
| 12 |   | he prepared this? |
| 13 | A | No. |
| 14 | Q | Okay.  I'm sorry.  I -- let me..... |
| 15 | A | No. |
| 16 | Q | .....say that again. |
| 17 | A | Oh. |
| 18 | Q | Was he acting as the tribal council's lawyer? |
| 19 | A | No. |
| 20 | Q | Okay.  And just to complete the cycle here, you may not |
| 21 |   | be able to identify all of this.  This is depo |
| 22 |   | exhibit 6. |
| 23 |   | (Deposition Exhibit 6 marked) |
| 24 |   | MR. ASCHENBRENNER:  And Mr. Walleri might be |
| 25 |   | able to help us out.  I think the exhibit B in the lower |

1   the -- that more than six or seven minutes was spent in
2   consideration of depo 7, the ordinance?
3 A  I -- I cannot make a statement one way or the other.
4   Like I said, I know we read over it; we discussed the
5   points of it; we discussed the reason for it; and we
6   faxed it back. And I can sit here and read this to you
7   in seven minutes.
8 Q  Okay.
9 A  And if that's the case, then that's -- may have been
10  what it was.
11 Q  Fine. And can you think of any other ordinances that
12  have been adopted by the.....
13 A  We have no other ordinance -- no other written
14  ordinances that I'm aware of right now.
15 Q  Okay. Fine. Thank you.
16       MR. ASCHENBRENNER: Just want to take a minute.
17  We'll go off the record and then we'll conclude and come back.
18       COURT REPORTER: We're off record. The time on
19  the camera is 2:36:30.
20       (Off record)
21       (On record)
22       COURT REPORTER: We're back on record. The
23  time on the camera is 2:38:59.
24       MR. ASCHENBRENNER: Thank you. I have no
25  further questions. Thank you very much, Mr. Miller.

LIZ D'AMOUR & ASSOCIATES, INC.
330 Wendell Street, Suite A
Fairbanks, Alaska 99701
(907) 452-3678

```
 1       ask -- and were you -- is it your understanding that
 2       Dot Lake has authorized IRHA to be the tribally
 3       designated housing authority for Dot Lake?
 4   A   Yes.
 5   Q   And how long ago did that happen?
 6   A   The last time was just about a week or so ago.  We do
 7       it annually to keep them -- to keep their programs
 8       current.
 9   Q   And how does that happen?  How does that -- what -- do
10       they contact you or do you contact them or how
11       does.....
12   A   They -- they send us a draft resolution and a letter of
13       authorization, I believe, is the other terminology for
14       it and request that they be signed and returned to them
15       by certain deadlines so they can get them into their
16       packets.
17   Q   And how long have you been doing -- responding to IRHA,
18       designating them as.....
19   A   Well, it's back prior to NAHASDA I think '95, I think,
20       was when the Tok Scatter Project was constructed and
21       they were our housing authority at that time, so it's
22       at least back that far.
23   Q   So in terms of authorizing IRHA to serve as Dot Lake
24       tribal housing authority, are these -- has the tribal
25       council deviated in any of in terms of its standard
```

LIZ D'AMOUR & ASSOCIATES, INC.
330 Wendell Street, Suite A
Fairbanks, Alaska 99701
(907) 452-3678

|    |   |                                                                                     |
|----|---|-------------------------------------------------------------------------------------|
| 1  |   | operating procedures of using at least two people?                                  |
| 2  | A | No.                                                                                 |
| 3  | Q | And do you know whether or not IRHA's -- or any of the                              |
| 4  |   | officers are aware of that procedure?                                               |
| 5  |   | MR. ANDREWS:  Are whose officers aware?                                             |
| 6  |   | MR. WALLERI:  IRHA's officers.                                                      |
| 7  | A | I would -- it's an assumption, which I hate to make                                 |
| 8  |   | assumptions, but I would assume that a lot of agencies                              |
| 9  |   | are aware of how things are done at the village level                               |
| 10 |   | and that's the way things are done on a lot of village                              |
| 11 |   | levels.                                                                             |
| 12 | Q | In terms of the ord- -- well, in terms of the Almquist                              |
| 13 |   | eviction procedure, you were actually a witness in that                             |
| 14 |   | proceeding, correct?                                                                |
| 15 | A | Yes.                                                                                |
| 16 | Q | Okay.  Were you ever contacted by Mr. Aschenbrenner or                              |
| 17 |   | his office to be a witness?                                                         |
| 18 | A | No, not that I'm aware of.                                                          |
| 19 | Q | Did -- in terms of the ordinance that was passed by Dot                             |
| 20 |   | Lake, the housing ordinance, is -- was this                                         |
| 21 |   | ordinance -- just to clarify, this exhibit 7, was this                              |
| 22 |   | actually passed by the tribe?                                                       |
| 23 | A | It was passed by Charles and myself as council members.                             |
| 24 | Q | Okay.  Thank you.                                                                   |
| 25 |   | MR. WALLERI:  That's all I've got.                                                  |

**LIZ D'AMOUR & ASSOCIATES, INC.**
330 Wendell Street, Suite A
Fairbanks, Alaska 99701
(907) 452-3678